UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SIEMENS MEDICAL SOLUTIONS USA, INC.,

                    Plaintiff,

         -against-

ANTHONY MEDIGO,

                    Defendant.

Civil Action No.: 20-cv-9634

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND EXPEDITED DISCOVERY**

---

Eric A. Savage, Esq.
Gary Moy, Esq.
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022.3298
212.583.9600

*Attorneys for Plaintiff*

TABLE OF CONTENTS

PAGE

**PRELIMINARY AGREEMENT** ........................................................................................ 1

**STATEMENT OF FACTS** .............................................................................................. 2

**ARGUMENT** .................................................................................................................. 2

I.  PLAINTIFF IS ENTITLED TO A TEMPORARY RESTRAINING ORDER
    AND PRELIMINARY INJUNCTION ............................................................................ 2

    A.  Siemens Healthineers Will Suffer Irreparable Harm Absent Injunctive
        Relief .................................................................................................................. 3

        1.  Medigo conceded that a breach of the restrictive covenant inflicts
            irreparable harm ..................................................................................... 4

        2.  Medigo has disclosed and/or will inevitably disclose confidential
            and trade secret information to a direct competitor ................................ 5

        3.  Medigo's use and/or disclosure of Siemens Healthineers'
            confidential information will inflict irreparable harm .............................. 6

    B.  Siemens Healthineers Has A Likelihood of Success on the Merits and/or
        Can Demonstrate a Sufficient Serious Question Going to the Merits to
        Make Each of Its Claims Fair Grounds For Litigation ........................................ 8

        1.  Choice of Law ......................................................................................... 8

        2.  Breach of Contract .................................................................................. 9

            a.  Medigo Breached His Agreements ............................................... 9

            b.  The Agreements Are Enforceable ................................................ 11

                (1)  The Agreements Are Reasonable in Scope and
                     Duration ........................................................................ 11

                (2)  The Agreements Protect Siemens Healthineers'
                     Legitimate Business Interest ............................................ 12

                (3)  The Restrictive Covenant Do Not Cause Undue
                     Hardship and Balancing of the Equities Favors
                     Enforcement ................................................................... 14

            c.  Granting Injunctive Relief is in the Public Interest .................... 16

TABLE OF CONTENTS
(CONTINUED)

PAGE

3.   DTSA, Misappropriation of Confidential Information, and
Unfair Competition ......................................................................... 17

a.   Defend Trade Secrets Act ............................................. 17

b.   Misappropriation of Confidential Information and
Unfair Competition ...................................................... 22

4.   Breach of Fiduciary Duties ........................................................ 22

5.   Tortious Interference with Contract .......................................... 22

6.   Tortious Interference with Business Relations ......................... 23

C.   A Balancing of the Equities Favors Granting Preliminary Injunctive Relief ...... 24

II.   SIEMENS HEALTHINEERS SHOULD NOT BE REQUIRED TO POST BOND ...... 24

III.   THE COURT SHOULD GRANT EXPEDITED DISCOVERY ................... 25

**CONCLUSION** ................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>Andino v. Fischer</u>,
    555 F. Supp. 2d 418 (S.D.N.Y. 2008)......................................................................3

<u>Avaya, Inc. v. Ali</u>,
    No. 12-10660 (DJC), 2012 WL 2888474 (D. Mass. July 13, 2012)......................17

<u>BDO Seidman v. Hirshberg</u>,
    93 N.Y.2d 382 (1999) .....................................................................................9, 13

<u>Cardwell v. Thermo Fischer Scientific</u>,
    No. 09 Civ. 7809 (DAB), 2010 WL 3825711 (S.D.N.Y. Sept. 23, 2010)............12

<u>Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.</u>,
    598 F.3d 30 (2d Cir. 2010)....................................................................................3

<u>Cortland Line Holdings LLC v. Lieverst</u>,
    No. 18 CV 307, 2018 WL 8278554 (N.D.N.Y. Apr. 6, 2018) ...............................16

<u>In re Coudert Bros. LLP</u>,
    673 F.3d 180 (2d Cir.2012)....................................................................................8

<u>Covenant Aviation Sec., LLC v. Berry</u>,
    15 F. Supp. 3d 813 (N.D. Ill. 2014) ...................................................................18

<u>DAG Jewish Directories, Inc. v. Y & R Media, LLC</u>,
    No. 09 Civ. 7802 (RJH), 2010 WL 46016 (S.D.N.Y. Jan. 7, 2010).......................26

<u>Devos, Ltd. v. Record</u>,
    No. 15 CV 6916 (AYS), 2015 WL 9593616 (E.D.N.Y. Dec. 24, 2015)................13

<u>Diesel Props S.r.l. v. Greystone Bus. Credit II LLC</u>,
    631 F.3d 42 (2d Cir. 2011)....................................................................................9

<u>Doctor's Assocs., Inc. v. Stuart</u>,
    85 F.3d 975 (2d Cir.1996).....................................................................................25

<u>EarthWeb, Inc. v. Schlack</u>,
    71 F. Supp. 2d 299 (S.D.N.Y. 1999).....................................................................5

<u>Envtl. Servs., Inc. v. Recycle Green Servs., Inc.</u>,
    7 F. Supp. 3d 260 (E.D.N.Y. 2014) ....................................................................23

i

# TABLE OF AUTHORITIES

**Page(s)**

Cases

Estee Lauder Cos. v. Batra,
    430 F. Supp. 2d 158 (S.D.N.Y. 2006).............................................................. *passim*

ExpertConnect, LLC v. Fowler,
    No. 18 Civ. 4828 (LGS), 2019 WL 3004161 (S.D.N.Y. July 10, 2019) ................................17

Faiveley Transport Malmo AB v. Wabtec Corp.,
    559 F.3d 110 (2d Cir. 2009)...............................................................................22

Gen. Sec., Inc. v. Commer. Fire Sec. Inc.,
    No. 17 CV 1194 (DRH) (AYS), 2018 WL 3118274 (E.D.N.Y. June 25, 2018)....................19

Gluco Perfect, LLC v. Perfect Gluco Prods.,
    No. 14 CV 1678 (KAM), 2014 WL 4966102 (E.D.N.Y. Oct. 3, 2014) ................................23

Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.,
    922 F. Supp. 2d 435 (S.D.N.Y. 2013), *aff'd,* 764 F.3d 210 (2d Cir. 2014) .............................3

Iannucci v. Segal Co., Inc.,
    No. 06 Civ. 4720, 2006 WL 8407380 (S.D.N.Y. June 27, 2006)............................................25

IBM v. Papermaster,
    No. 08 Civ. 9078 (KMK) 2008 WL 4974508 (S.D.N.Y. Nov. 21, 2008) ..........................8, 14

IDG USA, LLC v. Schupp,
    416 F. App'x 86 (2d Cir. 2011) .............................................................................3

Inflight Newspapers, Inc. v. Magazines In-Flight, LLC,
    990 F. Supp. 119 (E.D.N.Y. 1997) ..............................................................14, 20, 21

Intertek Testing Servs., N.A., Inc. v. Pennisi,
    No. 19 CV 7103, 2020 WL 1129773 (E.D.N.Y. Mar. 9, 2020) .............................................16

Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.,
    323 F. Supp. 2d 525 (S.D.N.Y. 2004)............................................................... *passim*

JTH Tax, Inc. v. Sawhney,
    No. 19 Civ. 4035, 2019 WL 3051760 (S.D.N.Y. July 11, 2019) ............................................17

Locke v. Tom James Co.,
    No. 11 Civ. 2961 (GBD), 2013 WL 1340841 (S.D.N.Y. Mar. 25, 2013) ..............................12

# TABLE OF AUTHORITIES

**Page(s)**

Cases

Marsh USA Inc. v. Karasaki,
    No. 08 Civ. 4195, 2008 WL 4778239 (S.D.N.Y. Oct. 31, 2008) ...........................................25

Marsh USA Inc. v. Schuhreimen,
    183 F. Supp. 3d 529 (S.D.NY. 2016)....................................................................................25

MasterCard Int'l Inc. v. Nike, Inc.,
    164 F. Supp. 3d 592 (S.D.N.Y. 2016)....................................................................................9

Medtech Prods. Inc. v. Ranir, LLC,
    596 F. Supp. 2d 778 (S.D.N.Y. 2008)....................................................................................18

Mercer Health & Benefits LLC v. DiGregorio,
    307 F. Supp. 3d 326 (S.D.N.Y. 2018).........................................................................3, 13, 16

Mickey's Linen v. Fischer,
    No. 17 C 2154, 2017 WL 3970593 (N.D. Ill. Sept. 8, 2017).............................................7, 19

Morgan Stanley v. Skowron,
    989 F. Supp. 2d 356 (S.D.N.Y. 2013)....................................................................................22

Nebraskaland, Inc. v. Brody,
    No. 09 Civ. 9155 (DAB), 2010 WL 157496 (S.D.N.Y. Jan. 13, 2010)..................................26

North Atl. Instruments, Inc. v. Haber,
    188 F.3d 38 (2d Cir. 1999).............................................................................................4, 11

Oliver Wyman, Inc. v. Eielson,
    282 F. Supp. 3d 684 (S.D.N.Y. 2017).................................................................................11

Oneida Grp., Inc. v. Steelite Int'l U.S.A., Inc.,
    No. 17 CV 957 (ADS) (AKT), 2017 U.S. Dist. LEXIS 206717 (E.D.N.Y. Dec.
    15, 2017) .........................................................................................................................20

Payment Alliance Int'l, Inc. v. Ferreira,
    530 F. Supp. 2d 477 (S.D.N.Y. 2007)....................................................................................6

PLC Trenching Co., LLC v. Newton,
    No. 6:11-CV-0515, 2011 WL 13135653 (N.D.N.Y. Dec. 12, 2011) .....................................22

Reed Const. Data Inc. v. McGraw-Hill Cos., Inc.,
    745 F. Supp. 2d 343 (S.D.N.Y. 2010)...................................................................................22

iii

# TABLE OF AUTHORITIES

**Page(s)**

Cases

Scutti Enters., LLC. v. Park Place Entm't Corp.,
   322 F.3d 211 (2d Cir. 2003)..................................................................24

Singas Famous Pizza Brands Corp. v. New York Advert. LLC,
   No. 10 Civ. 8976, 2011 WL 497978 (S.D.N.Y. Feb. 10, 2011) ..............................................25

Tesla Wall Sys, LLC v. Related Cos., L.P.,
   No. 17 Civ. 5966 (JSR), 2017 U.S. Dist. LEXIS 207932 (S.D.N.Y. Dec. 15,
   2017) ...........................................................................................18, 19, 20

Ticor Title Ins. Co. v. Cohen,
   173 F.3d 63, 69 (2d Cir. 1999) ......................................................4, 7, 12

Title Ins. Co. v. Cohen,
   173 F.3d 63 (2d Cir. 1999)........................................................... *passim*

Tristate Courier & Carriage, Inc. v. Berryman,
   No. C.A. 20574-NC, 2004 WL 835886 (Del. Ch. Apr. 15, 2004)..........................................23

Uni-World Capital, L.P. v. Preferred Fragrance, Inc.,
   73 F. Supp. 3d 209 (S.D.N.Y. 2014)................................................. *passim*

Vendavo, Inc. v. Long,
   397 F. Supp. 3d 1115 (N.D. Ill. 2019) ............................................. *passim*

Village of Cannon v. Bankers Trust Co.,
   920 F. Supp. 2d 520 (S.D.NY. 2006)........................................................8

Weichert Co. of Penn. v. Young,
   2007 WL 4372823 (Del. Ch. Dec. 7, 2007)..............................................12

## PRELIMINARY AGREEMENT

Plaintiff Siemens Medical Solutions USA, Inc. ("Siemens Healthineers" or the "Company") submits this memorandum of law in support of its motion for a temporary restraining order, a preliminary injunction, and expedited discovery, brought by Order to Show Cause. Plaintiff seeks to enjoin Defendant Anthony Medigo ("Medigo"), as well as anyone acting in concert with him, under his supervision, or on his behalf, from violating the non-compete terms of the Separation Agreement and Senior Management Confidentiality Agreement executed by Medigo and from engaging in continued tortious conduct.

Defendant Medigo worked for Siemens Healthineers as Global Vice President – Intracardiac Catheter Business before his separation in July 2020. In this critical position, Medigo had access to the Company's proprietary and confidential information, including, but not limited to, confidential customer, financial, and product information and other trade secrets. As a condition of his promotion to a senior management position, Medigo executed a Confidentiality Agreement containing non-competition, non-disclosure, and other restrictive covenants, which he affirmed in exchange for $405,000, plus additional benefits, as part of his Separation Agreement. Among the restrictions, Medigo agreed -- for only one year -- not to work on competing products and services for a competitor. Medigo also agreed to provide the Company with advance notice in the event that he intended to work for a competing business during the restricted period.

Nonetheless, Medigo breached multiple provisions of the Separation and Confidentiality Agreements by joining a competitor as its Chief Commercial Officer (without providing any of the requisite notice) to advance products on behalf his new employer which directly compete with the products he advanced on behalf of Siemens Healthineers. Medigo's breach of the restrictive covenants threatens to erode Siemens Healthineers' 100% market advantage for which the Company has invested substantial effort and millions of dollars.

An injunction to protect Siemens Healthineers' trade secrets and confidential information, customer relationships, and goodwill is imperative, without which the Company will be subjected to irreparable harm by a faithless former executive.  Accordingly, Siemens Healthineers seeks a temporary order and preliminary injunction requiring, among other things, Defendant Medigo to honor the Separation and Confidentiality Agreements in exchange for which the Company has provided substantial consideration.

## STATEMENT OF FACTS

Plaintiff Siemens Healthineers incorporates by reference and respectfully refers the Court to the copy of the Complaint, Declaration of Nikki Gainey, Declaration of James Gilmore, Declaration of Maria Nuphaus, and Declaration of Eric A. Savage, Esq. and exhibits attached thereto for a full and accurate recitation of the facts that form the basis of the instant application for a temporary restraining order, preliminary injunction, and expedited discovery.

## ARGUMENT

### I.      PLAINTIFF IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Medigo's employment at NuVera places him in a position where he will be providing assistance to a company which has positioned itself as Siemens Healthineers' direct competitor as to the very products for which he led Siemens Healthineers' development and marketing efforts. Medigo's employment with NuVera places him in a position in which Siemens Healthineers' confidential information will inevitably be disclosed.  If Medigo is allowed to continue with employment with NuVera in violation of the Separation and Confidentiality Agreements, it will cause irreparable harm to Siemens Healthineers.  Once lost, Siemens Healthineers' trade secrets and confidential information cannot be restored.  The nature of the losses that would be caused, if Siemens Healthineers' trade secrets and confidential information were disclosed to NuVera or used to help it in competing with Siemens Healthineers, cannot be fully quantified or fully measured.

2

A plaintiff seeking a preliminary injunction "must establish: '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth., 922 F. Supp. 2d 435, 439 (S.D.N.Y. 2013), aff'd, 764 F.3d 210 (2d Cir. 2014) (citing Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010)).The same standard applies to an application for a temporary restraining order.  See Andino v. Fischer, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008).  Applying this standard, the temporary restraining order that Siemens Healthineers seeks is both necessary and proper to preserve the status quo and this Court's ability to grant effective, meaningful relief after a determination of the merits.  Siemens Healthineers is entitled to injunctive relief to prevent it from continuing to suffer irreparable harm at the hands of its former Global Vice President.

### A.    Siemens Healthineers Will Suffer Irreparable Harm Absent Injunctive Relief

 "To establish irreparable harm, a plaintiff must establish both that an injury is likely absent the injunction and that the injury cannot be adequately remedied with money damages."  IDG USA, LLC v. Schupp, 416 F. App'x 86, 88 (2d Cir. 2011).  Irreparable harm flows from a former employee's breach of a restrictive covenant.  See Title Ins. Co. v. Cohen, 173 F.3d 63, 69 (2d Cir. 1999) ("it would be very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come"); Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc., 323 F. Supp. 2d 525, 532 (S.D.N.Y. 2004); Mercer Health & Benefits LLC v. DiGregorio, 307 F. Supp. 3d 326, 347 (S.D.N.Y. 2018) ("It is well established in this Circuit that the loss of client relationships and customer goodwill that results from the breach of a non-compete clause generally constitutes irreparable harm.").  Siemens Healthineers will suffer irreparable harm without injunctive relief.

1.     **Medigo conceded that a breach of the restrictive covenant inflicts irreparable harm**

Notably, Medigo explicitly acknowledged that his breach of the restrictive covenants set forth in the Confidentiality Agreement, obligations which he reaffirmed in the Separation Agreement, inflicts irreparable harm.  More specifically, in Section 5(E) of the Confidentiality Agreement, Medigo acknowledged that the non-compete restriction "is necessary because the other restrictions … are insufficient to prevent unfair competition and protect the Company's trade secrets and other legitimate business interests standing alone, and because [Medigo] is of special, unique, and extraordinary value."  As such, a violation of the Confidentiality Agreement "would cause not only actual, quantifiable compensable damage, but also additional irreparable harm and continuing injury to the Company of a non-quantifiable nature, for which there would be no adequate remedy at law."  (Confidentiality Agreement §7)

To that end, Medigo "acknowledge[d] and agree[d] that a violation of any of [Medigo's] obligations … will cause or result in irreparable harm and damage to the Company".  (Id.)  Courts have found acknowledgement of this type to warrant a finding of irreparable harm and issuance of injunctive relief.  See North Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 49 (2d Cir. 1999) (finding irreparable harm and relying, in part, that defendant "acknowledged in his [e]mployment [a]greement that a breach of the confidentiality clause would cause 'irreparable injury' to [plaintiff]"); Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 69 (2d Cir. 1999)  (upholding injunction where the underlying contract conceded that, in the event of a breach, plaintiff would be entitled to injunctive relief); Estee Lauder Cos. v. Batra, 430 F. Supp. 2d 158, 174 (S.D.N.Y. 2006).

2.     **Medigo has disclosed and/or will inevitably disclose confidential and trade secret information to a direct competitor**

Courts have recognized that a former employee, whether inadvertently or not, under certain circumstances may directly or indirectly use or disclose a former employer's trade secret

information.  "Even where a trade secret has not been disclosed, irreparable harm may be found based upon a finding that trade secrets will inevitably be disclosed, where ... the movant competes directly with the prospective employer and the transient employee possesses highly confidential or technical knowledge concerning [] marketing strategies, or the like.").  Estee Lauder Cos. v. Batra, 430 F. Supp. 2d 158, 174 (S.D.N.Y. 2006) (quoting EarthWeb, Inc. v. Schlack, 71 F. Supp. 2d 299, 309 (S.D.N.Y. 1999)).  The risk of Medigo's inevitable disclosure of confidential and trade secret information is particularly heightened here because Medigo is servicing Siemens Healthineers' direct competitor on whose behalf Medigo is advancing competing products on which he worked for Siemens Healthineers and acquired confidential and trade secret information.

As Global Vice President–Intracardiac Catheter Business, Medigo was intimately involved in soliciting customers, securing business relationships with key opinion leaders who might be interested in using the Company's devices, hiring and training the Company's sales force, and developing and marketing Siemens Healthineers' intracardiac catheter products, specifically the 2D Catheter (Acuson) and 3D/4D ICE Catheter (AcuNav Volume ICE Catheter).  Medigo was responsible for developing and acquiring detailed knowledge of Siemens Healthineers' catheter products, including knowledge of the strengths and weaknesses of Company products, sales projections, and costs and anticipated profit margins.  Medigo was expected to study and understand any competitors for the products, as well as help develop responses and strategies to maintain and grow the market position for Siemens Healthineers.  (See infra Part I.B.3. at pp. 18-21)  If Medigo is allowed to continue his employment at NuVera as its Chief Commercial Officer, it is impossible to believe that he will not be working in competition with products and services on which he worked, or as to which he had access to confidential information, during his employment with Siemens Healthineers.  NuVera announced that as Chief Commercial Officer, Medigo will be "bring[ing] over 20 years in the cardiovascular medical device space with a proven

track record of commercial success." NuVera describes itself as "enabling a new era in transcatheter cardiac interventions through the advancement of real-time 3D intracardiac echocardiography (4D ICE)." See https://www.nuveramedical.com/#company. Although NuVera has not yet made its intracardiac equipment for sale, it has stated that it "expects to receive FDA clearance this year [2020]." Koleva, Gergana, NuVera: New Visualization Era for Cardiac Interventions, available at https://magazine.cardiology2.com/mar2020/nuvera. In other words, Medigo is working for NuVera in a function comparable to that that he performed for Siemens Healthineers, impermissibly advancing a product which competes with the very same products Medigo worked to advance against competitors, such as his current employer NuVera. Under such circumstances, disclosure is inevitable. See Payment Alliance Int'l, Inc. v. Ferreira, 530 F. Supp. 2d 477, 482 (S.D.N.Y. 2007) ("even if [defendant] acted with the best of intentions, he may unintentionally transmit information gained through his [former employment] during his day to day contact with his new employer.") (quotation omitted); Estee Lauder, 430 F. Supp. 2d at 174.

### 3. Medigo's use and/or disclosure of Siemens Healthineers' confidential information will inflict irreparable harm

Absent an injunction, Medigo will be able to use Siemens Healthineers' own confidential information against it, which will cause Siemens Healthineers to lose business and customer goodwill. Medigo's violation of the Separation and Confidentiality Agreements "threaten to cause [Siemens Healthineers] irreparable harm by luring away the business of a number of long-term [Company] clients." Johnson Controls, 323 F. Supp. 2d at 532. Indeed, it is well-settled that the loss of "future sales, goodwill and entire client accounts" cannot be easily quantified. Uni-World Capital, L.P. v. Preferred Fragrance, Inc., 73 F. Supp. 3d 209, 236 (S.D.N.Y. 2014) (the loss of client relationships and good will can only be remedied by monetary damages in unusual circumstances); Ticor, 173 F.3d at 69 ("it would be very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an

indeterminate amount of business in years to come"); see also Mickey's Linen v. Fischer, No. 17 C 2154, 2017 WL 3970593, at *18 (N.D. Ill. Sept. 8, 2017) (it is "precisely the difficulty of pinning down what business has been or will be lost that makes an injury 'irreparable.'").

NuVera has developed its own intracardiac equipment, which NuVera claims is superior to Siemens Healthineers' AcuNav Volume Catheter and is expected to receive FDA clearance to go to the market in 2020.  NuVera has also positioned its catheter as superior to 2D ICE and, as such, is attempting to take business away from Siemens Healthineers' Acuson 2D Catheter product.  By joining NuVera, Medigo is servicing Siemens Healthineers' direct competitor.  It is highly foreseeable, if not inevitable, that he has used and/or will use Siemens Healthineers' confidential information to counter the very products about which he acquired detailed knowledge and whose sales and marketing initiatives he helped formulate and direct.

Medigo's violation of his non-competition and non-disclosure restrictive covenants "threaten to cause [Siemens Healthineers] irreparable harm by luring away the business of a number of long-term [ ] clients." Johnson Controls, 323 F. Supp. 2d at 532. Through its employment of Medigo, who had access to and/or was instrumental in the development of confidential business information regarding the development, marketing, and manufacturing of Siemens Healthineers' products, NuVera has access to and Medigo inevitably will use confidential information about Siemens Healthineers' intracardiac products and future product development, as well as the Company's research and past and present business plans to respond to competitors and secure business relationships.  This will erode the market advantage that Siemens Healthineers developed through considerable investment of time, effort, and money.

If Medigo is allowed to use "even the information in [his] head" that is based on Siemens Healthineers' confidential and trade secret information, Medigo (and NuVera) will have an "unfair advantage by avoiding the costly process of actually discovering" this information and be able to

design products and pitch customers using same.  See Vendavo, Inc. v. Long, 397 F. Supp. 3d

1115, 1142 (N.D. Ill. 2019) (noting that if former employee is allowed to use "even the information

in [his] head" that is based on former employer's confidential information, new employer will have

an "unfair advantage by avoiding the costly process of actually discovering" this information).

Such a situation will cause Siemens Healthineers unquantifiable harm.

Medigo has put himself in an unfair, advantageous position to challenge and harm Siemens

Healthineers' business on behalf of his new employer, in violation of the Separation Agreement

and Confidentiality Agreement.  See IBM v. Papermaster, No. 08 Civ. 9078 (KMK) 2008 WL

4974508, at *8 (S.D.N.Y. Nov. 21, 2008) ("Because [defendant] has been inculcated with some of

IBM's most sensitive and close-guarded technical and strategic secrets, it is no great leap for the

Court to find that Plaintiff has met its burden of showing a likelihood of irreparable harm.").  As

a result of Medigo's conduct and inevitable disclosure and use of confidential information,

Siemens Healthineers is likely to lose customer and business relationships and the goodwill built

up over the years, neither of which can be measured with monetary damages.  See e.g., Uni-World

Capital, 73 F. Supp. 3d at 236.

**B.    Siemens Healthineers Has A Likelihood of Success on the Merits and/or Can Demonstrate a Sufficient Serious Question Going to the Merits to Make Each of Its Claims Fair Grounds For Litigation**

       **1.    <u>Choice of Law</u>**

"When a federal district court sits in diversity, it generally applies the law of the state in

which it sits, including that state's choice of law rules." In re Coudert Bros. LLP, 673 F.3d 180,

186 (2d Cir.2012).  New York courts generally honor choice of law provisions.  See Village of

Cannon v. Bankers Trust Co., 920 F. Supp. 2d 520, 526 (S.D.NY. 2006).  Section 22 of the

Separation Agreement provides that the Agreement "shall be interpreted and construed and

enforced in accordance with the laws of the State of New York and before the Courts of the State

of New York, without regard to its conflict of laws provisions."  Additionally, Section 9 of the Confidentiality Agreement provides that the Agreement "shall be interpreted and construed in accordance with and governed by the laws of the state of the employee's assigned regular work location".  Defendant Medigo worked remotely from New York City during his employment with Siemens Healthineers.  Accordingly, New York law applies.

### 2.   **Breach of Contract**

The Separation Agreement and Confidentiality Agreement are fully and properly enforceable and are the subject of clear violations by Medigo.  New York courts apply a "three-part test to determine the reasonableness, and ultimately the enforceability, of anti-competitive employee agreements."  MasterCard Int'l Inc. v. Nike, Inc., 164 F. Supp. 3d 592, 601 (S.D.N.Y. 2016) (citing BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 388–89 (1999)).  Under this test, "[a] restraint is reasonable only if it: (1) is no greater than is required for the protection of the legitimate interest of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public."  Id.  The restrictive covenants easily satisfy these tests.

### a.   **Medigo Breached His Agreements**

Under New York law, the elements of a breach of contract claim are "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." See Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 62 (2d Cir. 2011).  There are two enforceable agreements in this case that prohibit Medigo from engaging in activities in competition with Siemens Healthineers.

Siemens Healthineers likely will be able to establish that Medigo breached the Separation Agreement and Confidentiality Agreement.  At the outset, Medigo violated Section 6 of the Confidentiality Agreement by failing to provide advance written notice prior to beginning his

employment with NuVera.   Moreover, Medigo violated Section 5 of the Confidentiality Agreement and Sections 14 & 15 of the Separation Agreement by working as the Chief Commercial Office for a direct competitor, which similarly develops and markets intracardiac equipment.  While at Siemens Healthineers, Medigo participated in discussions and had access to proprietary information.  As Vice President – Interventional Therapies and Global Vice President – Intracardiac Catheter Business, Medigo was involved in hiring and training the Company's sales force and developing relationships with key opinion leaders necessary to expand customer visibility of and purchase of Siemens Healthineers intracardiac products.  In those roles, he had full access to documents, strategies, market research, and non-public information about Siemens Healthineers products, which he used with key opinion leaders and prospective customers.

As NuVera's Chief Commercial Officer, Medigo will undoubtedly be performing the same or similar job duties, calling upon the same customers, device manufacturers, and business contacts, and competing in the same locations in which he formerly worked for Siemens Healthineers.  In fact, two weeks ago, Siemens Healthineers learned that NuVera contacted a key opinion leader -- who works at a hospital, has been a strong advocate for the Company's product, and who Medigo knows only through his work for the Company -- to show him NuVera's competing catheter.  NuVera was soliciting customers and pitching one of Siemen Healthineer's key opinion leaders to advance NuVera's product that competes against Medigo's former employer.   Medigo inevitably will rely on information developed and acquired at Siemens Healthineers to undermine its efforts to secure the business of existing and prospective customers (which he had involvement and responsibility developing) and use that information to compete against the Company with full insight into its intracardiac products, marketing strategies, and business plans.

**b.**   **The Agreements Are Enforceable**

**(1)**   **The Agreements Are Reasonable in Scope and Duration**

At the outset, Medigo acknowledged that the non-competition restriction "is necessary …

to prevent unfair competition and protect the Company's trade secrets and other legitimate

business interests."  (Separation Agreement § 5(E)) Moreover, Medigo also acknowledged and

"unequivocally agrees that the duration and geographic scope of the restrictive covenants is

reasonable in light of the position [Medigo] holds and the geographically broad scope of doing

business on such a global basis.  (Separation Agreement § 5(H))  As such, Medigo should be bound

to the acknowledgments he made, which were given in consideration for his employment with the

Company and reaffirmed for a substantial monetary amount.  See Haber, 188 F.3d at 49; Estee

Lauder, 430 F. Supp. 2d at 174.

The Agreements are narrowly tailored to cover only, for one year, (1) services similar or

comparable in function to the services Medigo provided, worked to develop, or managed; or (2)

the sale, servicing, or development of a product that competes with a product that Medigo had

involvement with or about which he obtained confidential information in the two years preceding

his separation from employment; (3) material involvement in business dealings with a Covered

Customer on behalf of a competitor; or (4) services likely to involve the use or disclosure of

confidential information.  As such, Medigo remains free to engage in a wide array of business

activity as these agreements do not prevent Medigo from being gainfully employed or from

working in his profession for any other employer which does not compete with Siemens

Healthineers (which Medigo acknowledged in the Confidentiality Agreement he signed).

In other words, Medigo is not being subjected to an undue hardship which would impede

this Court from issuing an appropriate restraining order.  See Oliver Wyman, Inc. v. Eielson, 282

F. Supp. 3d 684, 697 (S.D.N.Y. 2017) ("New York courts have routinely found one-year

restrictions to be reasonable."); Locke v. Tom James Co., No. 11 Civ. 2961, 2013 WL 1340841 (S.D.N.Y. Mar. 25, 2013) (enforcing prohibition against former employee from competing or soliciting former employer's customers for two years in any territory where he previously conducted business); Cardwell v. Thermo Fischer Scientific, No. 09 Civ. 7809, 2010 WL 3825711, at *7 (S.D.N.Y. Sept. 23, 2010) (a one year restriction is reasonable under the circumstances" where employer was "engaged in the business of development, manufacture, sales and marketing" and employee "would be privy to an abundance of information about [employer]")).

Further, the geographic scope of post-employment restriction is reasonable to the extent it is necessary to protect a party's legitimate interests. "[T]he reasonableness of a covenant's scope is not determined by reference to physical distances, but by reference to the area in which a covenantee has an interest the covenants are designed to protect." Weichert Co. of Penn. v. Young, 2007 WL 4372823, at *4 (Del. Ch. Dec. 7, 2007). As reflected in Medigo's title as Global Vice President and acknowledgment in the Confidentiality Agreement, the restricted geographic scope is reasonable because the Company's intracardiac business is global and Medigo had responsibility for advancing those products (against which he is now competing) throughout the world.

### (2) The Agreements Protect Siemens Healthineers' Legitimate Business Interest

"Assuming a covenant by an employee not to compete surmounts its first hurdle, that is, that it is reasonable in time and geographic scope, enforcement will be granted to the extent necessary (1) to prevent an employee's solicitation or disclosure of trade secrets, (2) to prevent an employee's release of confidential information regarding the employer's customers, or (3) in those cases where the employee's services to the employer are deemed special or unique." Ticor, 173 F.3d at 70. An employer has a legitimate business interest securing "protection against misappropriation of the employer's trade secrets or of confidential customer lists, or protection from competition by a former employee whose services are unique or extraordinary." BDO

Seidman, 93 N.Y.2d at 389; see also Mercer, 307 F. Supp. 3d at 351 ("Restrictions on the use of trade secrets and confidential information in the solicitation of prospective clients can be justified based on the need to protect that information.").

An employer also "has a legitimate interest in preventing former employees from exploiting or appropriating the goodwill of a client or customer, which had been created and maintained at the employer's expense, to the employer's competitive detriment." BDO Seidman, 93 N.Y.2d at 392; see also Mercer, 307 F. Supp. 3d at 349 ("an employer … has a legitimate interest in protecting client relationships developed by an employee at the employer's expense"); Devos, Ltd. v. Record, No. 15 CV 6916 (AYS), 2015 WL 9593616, at *12 (E.D.N.Y. Dec. 24, 2015) (same). "[T]his interest may extend to clients with whom the former employee had not had a relationship during employment, but whom he solicited using confidential information belonging to the employer." Devos, 2015 WL 9593616, at *12.

As Medigo acknowledged when he signed the Confidentiality Agreement, the non-competition, non-disclosure, and other restrictive covenants are necessary to protect Siemens Healthineers from Medigo using or disclosing confidential information for any purpose outside his employment with Siemens Healthineers because the former Global Vice President had unlimited access to proprietary information and oversaw the Company's sales, marketing, and product portfolio personnel. Medigo had responsibility for all customer relationships throughout the world. In his role as Global Vice President, Medigo played an integral role in developing and marketing Siemens Healthineers' products and cultivating business relationships, as well as studying competitors to develop responses and strategies to maintain and enhance the Company's market position. In fact, Medigo was aware of Siemens Healthineers' side-by-side comparison of NuVera's products. Medigo acquired knowledge of Siemens Healthineers' product plans, as well as plans for its next generation ICE catheter (against which NuVera will compete), e.g., the time

13

table, go-to-market plan, and training program.  In sum, Medigo acquired full knowledge of the Company's strategy on how it will win the ICE catheter market; there is nothing he does not know.

Without an injunction, whether purposefully or not, Medigo will inevitably use such information against Siemens Healthineers to service his personal interests and advance the business interests of NuVera, which is attempting to erode the Company's AcuNav Volume Catheter's current *one hundred percent* of the market.  See Papermaster, 2008 WL 4974508, at *9 ("it is likely that [employee] inevitably will draw upon his experience and expertise in microprocessors and the 'Power' architecture, which he gained from his many years at IBM, and which Apple found so impressive, to make sure that the iPod and iPhone are fitted with the best available microprocessor technology and at a lower cost"); Inflight Newspapers, Inc. v. Magazines In-Flight, LLC, 990 F. Supp. 119, 125 (E.D.N.Y. 1997) (disclosure was likely where the defendant "provide[d] an identical product to its customers as previously provided by [the plaintiff].").  Through Medigo, NuVera would be able to improve or create competing products with the technical, business, and customer information that Medigo acquired at Siemens Healthineers -- and thereby erode the Company's AcuNav's one hundred percent market advantage, as well as take business away from the Acuson 2D Catheter.  Siemens Healthineers' confidential and trade secret information would enable NuVera to avoid the significant risk and enormous costs associated with time-consuming research, trial and error, and the potentially large losses associated with marketing in a way which does not meet the needs of the market or one that is priced or positioned incorrectly.  As such, Medigo should be precluded, for only one year, from providing services on behalf of a direct competitor advancing competing products.

### (3)   The Restrictive Covenant Do Not Cause Undue Hardship and Balancing of the Equities Favors Enforcement

The potential harm to Siemens Healthineers is great if the Court were to decline its request for injunctive relief.  Solely because of his employment with Siemens Healthineers, Medigo is able

14

to interfere with its business relationships and opportunities, as well as unfairly damage its competitive position, for the very reason that he had access to confidential and/or other proprietary and business-sensitive information, as well as access to customer and business relationships.

By contrast, the potential harm to Medigo is minimal, as Medigo acknowledged. (See Confidentiality Agreement § 5(H) (Medigo agreeing that "compliance with this Agreement will not cause any undue hardship or unreasonable restriction on his [ ] ability to earn a livelihood"). Medigo is and will remain free to work on products which do not conflict with Siemens Healthineers and has the opportunity to work at any number of companies where his work would not implicate Siemens Healthineers' confidential information. (See Confidentiality Agreement § 5(H) (Medigo acknowledging that "the restrictions on his [ ] activities during and after employment do not prevent [him] from using skills in any business or activity that is not in competition with Company")). Siemens Healthineers is simply trying to protect itself from having its investment in Medigo being used to its detriment, *i.e.*, to protect its legitimate business interests. Enjoining Medigo from unfairly competing with Siemens Healthineers will not prevent Medigo from working during the one-year restricted period (subject to extension at the Court's judgment to cover the period of Plaintiff's breach of the restrictive covenants). In any event, Siemens Healthineers paid Medigo $405,000 representing twelve months base pay plus a lump sum bonus pursuant to the Separation Agreement in exchange for Medigo, among other things, reaffirming his restrictive covenant obligations. (See Separation Agreement §§ 2, 14-15)

Accordingly, the irreparable injury that Siemens Healthineers will sustain absent an award of injunctive relief far outweighs any possible harm to Defendants. See Intertek Testing Servs., N.A., Inc. v. Pennisi, 443 F. Supp. 3d 303, 346 (E.D.N.Y. 2020) (finding equities favored injunction where "the Court would be enforcing contractual obligations to which the individual defendants freely agreed, and in exchange for which they received the benefits of their employment

with plaintiff[]" and, absent injunction, "plaintiff will likely lose the confidentiality of its trade secrets and confidential information, its goodwill with longstanding clients, and the benefit of its bargain"); Cortland Line Holdings LLC v. Lieverst, No. 18 CV 307, 2018 WL 8278554, at * 9 (N.D.N.Y. Apr. 6, 2018) (balance of hardships favored the plaintiffs, who hired defendant with the understanding that he would not compete with the company for two years after leaving and would not use confidential company information to do so, because "[f]ailing to receive the benefit of its bargain would create a hardship to the Plaintiffs"); Mercer, 307 F. Supp. 3d at 354-55 (balance of equities tipped decidedly in plaintiff's favor because plaintiff merely sought "to maintain the status quo for its current clients and prevent Defendants from breaching their contractual obligations … and engaging in tortious and unfair business practices.").

### c.  Granting Injunctive Relief is in the Public Interest

Enforcing the agreements at issue in this case will not harm the public.  "If anything, the public interest would be advanced by such an injunction because it would encourage parties to abide by their agreements." Uni-World, 73 F. Supp. 3d at 237.  By granting Siemens Healthineers' motion for a temporary restraining order, this Court would further the vital public interest in the integrity and enforceability of contracts and the promotion of business ethics.  Denying injunctive relief rewards Medigo's breach of contract and unlawful activity.

If the public has any interest in the issues surrounding the present case, it lies in preserving the enforceability of contracts.  See JTH Tax, Inc. v. Sawhney, No. 19 Civ. 4035, 2019 WL 3051760, at *7 (S.D.N.Y. July 11, 2019) ("injunctive relief would serve the public interest by ensuring that reasonable restrictive covenants into which the parties voluntarily entered are enforced").  Here, the public's interest includes, "protecting trade secrets and customer goodwill and ensuring that legally enforceable contracts are in fact enforced." Avaya, Inc. v. Ali, No. 12-10660 (DJC), 2012 WL 2888474, at *9 (D. Mass. July 13, 2012).  Granting the requested relief

16

fulfills the public's expectation that the terms of contracts will be enforced and that confidential information and customer goodwill will be protected. Denying the relief sought can only frustrate those legitimate expectations. Accordingly, the public interest favors granting the relief sought.

Further, the restrictive covenants in this case would not restrain competition. NuVera developed and marketed its intracardiac echocardiographic equipment before its employment of Medigo and it will be able to continue doing so without employing Medigo – for one year – to provide services similar to the services Medigo provided Siemens Healthineers and involving the sale and development of a product with which Medigo had involvement and about which he obtained confidential information during his employment at Siemens Healthineers.

### 3. DTSA, Misappropriation of Confidential Information, and Unfair Competition

#### a. Defend Trade Secrets Act Defend

A court may enjoin misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA") where: (1) the information is a trade secret used or intended for use in interstate or foreign commerce, and (2) has been, or is threatened to be, misappropriated. See 18 U.S.C. § 1836(b)(1) & (3)(A); ExpertConnect, LLC v. Fowler, No. 18 Civ. 4828 (LGS), 2019 WL 3004161, at *4 (S.D.N.Y. July 10, 2019). Under the DTSA, the term "trade secret" includes "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes" if: (1) "the owner thereof has taken reasonable measures to keep such information secret"; and (2) "the information derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

At this early stage, it is sufficient to generally describe the trade secret information and Siemens Healthineers' efforts to keep it confidential.  See Tesla Wall Sys, LLC v. Related Cos., L.P., No. 17 Civ. 5966, 2017 U.S. Dist. LEXIS 207932, at *24 (S.D.N.Y. Dec. 15, 2017); Covenant Aviation Sec., LLC v. Berry, 15 F. Supp. 3d 813, 818 (N.D. Ill. 2014).  Several categories of information at issue here constitutes protectable trade secrets, including, but not limited to:

- Financial and business information, such as development plans, marketing strategies, profit margins, sales reports, projects on which the Company is working.  See Declaration of James Gilmore, at ¶¶ 11-14, 26-27, 29; Declaration of Nikki Gainey, at ¶¶ 5-8; Tesla, 2017 U.S. Dist. LEXIS 207932, at *24 (internal pricing information is trade secret); Medtech Prods. Inc. v. Ranir, LLC, 596 F. Supp. 2d 778, 804 (S.D.N.Y. 2008) ("strategic information regarding price, distribution, and marketing; brand strategies; and confidential business relationships, have been found to constitute trade secrets"); Vendavo, 397 F. Supp. 3d at 1135 (financial information, e.g., "sales pipelines" and "sales revenue reports" are trade secrets).

- Proprietary product information, such as composition and formulations of products and products in development.  See Gilmore Decl. at ¶¶ 12-13, 26, 29; Gainey Decl. at ¶¶ 9-10; Tesla Wall Sys., 2017 U.S. Dist. LEXIS 207932, at *24 (work product, research, and engineering designs are trade secrets); Vendavo, 397 F. Supp. 3d at 1132 (information produced by plaintiff's efforts to identify and solve pricing issues for clients is trade secret).

- Customer information, such as customer-specific proposals or marketing strategy, products requested or purchased by specific customers, revenue generated by customer's purchases.  See Gilmore Decl.at ¶¶ 9, 11; Gainey Decl. at ¶¶ 5-8; Vendavo, 397 F. Supp. 3d at 1132 (customer-specific information, including "solutions developed" for clients, are trade secrets.); Mickey's Linen v. Fischer, No. 17 C 2154, 2017 WL 3970593, at *9 (N.D. Ill. Sept. 8, 2017) (customer purchasing preferences, contract terms, pricing, expirations, and renewal terms

and discounts are trade secrets).

- Customer lists.  See Gilmore Decl. at ¶¶ 9, 11; Gainey Decl. at ¶¶ 5, 8; <u>Gen. Sec., Inc. v. Commer. Fire Sec. Inc.</u>, No. 17 CV 1194 (DRH) (AYS), 2018 WL 3118274, at *5 (E.D.N.Y. June 25, 2018) (customer lists can constitute trade secrets); <u>Vendavo</u>, 397 F. Supp. 3d at 1134 (names and contact information for customers, including identities of decision makers, are trade secrets if kept secret); <u>Mickey's Linen</u>, 2017 WL 3970593, *9 (list identifying top, highest revenue producing customers, are trade secrets).

This information is not generally known to the public and has significant commercial value in the hands of a competitor that could use it to: improve or design new products to undercut Siemens Healthineers' business and/or its product differentiation and positioning; undermine pricing; target customers; tailor proposals specific to customers; and induce those customers to forego or reduce business with the Company for NuVera's products. With knowledge of the strengths and weaknesses of the Company's products, Medigo is in a position advise on the design of products and marketing plans for NuVera's benefit and to Siemens Healthineers' detriment.

Siemens Healthineers has engaged in reasonable efforts to maintain the secrecy of its confidential and trade secret information, including through confidentiality agreements and restricting access to its products, customer information, and business and strategic plans to select personnel with unique passwords.  See <u>Vendavo</u>, 397 F. Supp. 3d at 1136 (employer took reasonable efforts to keep information secret by "implement[ing] technological security" such as limiting access to information and requiring employees to sign non-disclosure agreements).

The Court has the power to enjoin both "actual" and "threatened" misappropriation—both are present here.  See 18 U.S.C. § 1836(b)(1) & (3).  "Misappropriation" means disclosure or use of a trade secret by a person "who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know the trade secret was acquired through improper means,

under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty." <u>Tesla Wall Sys.</u>, 2017 U.S. Dist. LEXIS 207932, at *25.  "[U]nder state law and the DTSA, the allegation of a threat of misappropriation is sufficient."  <u>Oneida Grp., Inc. v. Steelite Int'l U.S.A., Inc.</u>, No. 17 CV 957 (ADS) (AKT), 2017 U.S. Dist. LEXIS 206717, at *21 (E.D.N.Y. Dec. 15, 2017); <u>see also</u> <u>Inflight Newspapers</u>, 990 F. Supp. at 125 (granting preliminary injunction and noting that "plaintiffs need not establish that the information was actually used, but need only show that the use and disclosure of an employer's protected confidential information is likely to occur.").

The DISA recognizes a cause of action for "inevitable disclosure" of trade secrets—*i.e.*, a "plaintiff may prove a claim of trade secret misappropriation by demonstrating that a defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets."  <u>Vendavo</u>, 397 F. Supp. 3d at 1139.  Courts employ a three-factor analysis to evaluate whether a defendant will inevitably disclose trade secrets in his new position: (1) level of competition between the former and new employer; (2) whether the employee's new position is comparable to the position he held with the former employer; and (3) the actions the new employer has taken to prevent the defendant from using or disclosing trade secrets of the former employer.  <u>Id.</u> at 1140.  As set forth *supra* at pp. 5-8, there is no context in which these factors can more aptly apply than in this case.

Siemens Healthineers and NuVera are direct competitors in that each manufacture and sell intracardiac products.  <u>See</u> <u>Inflight Newspapers</u>, 990 F. Supp. at 125 (disclosure likely where the defendant "provide[d] an identical product to its customers as previously provided by [the plaintiff]").  Moreover, in both positions, Medigo is tasked with generating growth for his employer's products.  Through Medigo, NuVera would be able to improve existing competing products or create new products with the technical, financial, and customer information that Medigo acquired at Siemens Healthineers, access to which the Company limited to select

20

personnel with unique passwords.  Siemens Healthineers' confidential information would enable NuVera to avoid the significant risk and enormous costs associated with time-consuming research, trial and error, and the potentially large losses associated with a poor product or one that does not meet the needs of the market or one that is priced or positioned incorrectly.

If Medigo is allowed to use "even the information in [his] head" that is based on Siemens Healthineers' confidential and trade secret information, Medigo and NuVera will have an "unfair advantage by avoiding the costly process of actually discovering" this information and be able to design products and pitch customers using same.  See Vendavo, 397 F. Supp. 3d at 1142.  Such a situation will cause harm in unquantifiable ways.  See Estee Lauder, 430 F. Supp. 2d at 179 (irreparable harm when there is substantial risk that defendant will disclose trade secrets).  Indeed, there is a rebuttable presumption of irreparable harm when there is a "danger that, unless enjoined, a misappropriator of trade secrets will disseminate those secrets to a wider audience or otherwise irreparably impair the value of those secrets."  Faiveley Transport Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009).  Here, there is a danger that, once disclosed, the value of Siemens Healthineers' confidential and trade secret information will be irreversibly impaired.

### b.     Misappropriation of Confidential Information and Unfair Competition

To state an unfair-competition claim on a theory of misappropriation, a plaintiff must allege that the defendant: "(1) misappropriated and used, (2) the plaintiff's property, (3) to compete against the plaintiff's own use of the same property."  See PLC Trenching Co., 2011 WL 13135653, at *9.  Similarly, "[t]o state a claim for misappropriation of confidential information, a plaintiff must allege that the defendant used the plaintiff's confidential information for the purpose of securing a competitive advantage."  Reed Const. Data Inc. v. McGraw-Hill Cos., Inc., 745 F. Supp. 2d 343, 352 (S.D.N.Y. 2010).  For the reasons set forth above, Siemens Healthineers has a

likelihood of success on the merits of its misappropriation of confidential information claim insofar as Medigo is in possession of Siemens Healthineers' confidential information and have or will use such information to unfairly compete with Siemens Healthineers, including its strategic thinking and business plans; product insights, development, manufacturing, and roll out; marketing and expansion plans; key business and customer relationships; business information; and trade secrets.

### 4.    Breach of Fiduciary Duties

Employees owe their employers a fiduciary duty of loyalty, including a duty not to use or disclose the employer's confidential information for the purpose of competing with the employer. See PLC Trenching Co., LLC v. Newton, No. 6:11-CV-0515, 2011 WL 13135653, at *9 (N.D.N.Y. Dec. 12, 2011); see also Morgan Stanley v. Skowron, 989 F. Supp. 2d 356, 362 (S.D.N.Y. 2013) ("[T]he duty of an employee not to use or divulge confidential knowledge acquired during his employment is implicit in the employer-employee relation, is an absolute, and not a relative duty."). Medigo owed Siemens Healthineers a fiduciary duty of loyalty not to disclose its confidential information for the purpose of competing with the Company. Medigo breached and/or is threatening to breach his duty by providing information that Siemens Healthineers treat as confidential to a competitor for purposes of developing and marketing products and securing business for his new employer. Accordingly, there is a likelihood of success on the merits of the breach of fiduciary duty claim. See Gluco Perfect, LLC v. Perfect Gluco Prods., No. 14 CV 1678 (KAM), 2014 WL 4966102, at *23-24 (E.D.N.Y. Oct. 3, 2014) (granting preliminary injunction where likely to succeed on fiduciary duty and faithless servant claims).

### 5.    Tortious Interference with Contract

To prevail on its claim against Siemens Healthineers for tortious interference with contract, the Company must demonstrate: (1) the existence of valid contracts between Siemens Healthineers and another; (2) Medigo's knowledge of those contracts; (3) Medigo's procurement of breaches

of those contracts; and (4) damages.  See Envtl. Servs., Inc. v. Recycle Green Servs., Inc., 7 F. Supp. 3d 260, 276 (E.D.N.Y. 2014).  Siemens Healthineers has proven each of these elements.

First, Medigo is aware of Siemens Healthineers' contractual arrangement with BWI for the sale of 2D Catheters on which Medigo previously worked and obtained confidential information. Moreover, notwithstanding his knowledge of his post-employment restrictions, Medigo is working on NuVera products designed to take away business from (among other things) Siemens Healthineers' 2D Catheter, sales totaling hundreds of millions of dollars secured by a contractual relationship between Siemens Healthineers and BWI.  See Tristate Courier & Carriage, Inc. v. Berryman, No. C.A. 20574-NC, 2004 WL 835886, at *12 (Del. Ch. Apr. 15, 2004) ("[Defendant] and its principals had full knowledge of the restrictions imposed on [former employee] by the Covenant, yet they actively sought out (and took advantage of) [former employee]'s assistance in starting a company to compete with [plaintiff] and to solicit [plaintiff's] customers.").

### 6.    Tortious Interference with Business Relations

"To state a claim for tortious interference with business relations under New York law, four conditions must be met: (i) the plaintiff had business relations with a third party; (ii) the defendants interfered with those business relations; (iii) the defendants acted for a wrongful purpose or used dishonest, unfair, or improper means; and (iv) the defendants' acts injured the relationship." Scutti Enters., LLC. v. Park Place Entm't Corp., 322 F.3d 211, 215 (2d Cir. 2003). Here, Siemens Healthineers has business relationships with each of its clients and prospective clients. Medigo has interfered and/or will interfere with Siemens Healthineers' business relationships (e.g., with BWI and key opinion leaders) by undermining those relationships through Medigo's use of the Company's confidential information in service of NuVera.  Medigo will inevitably rely on the confidential information he acquired at Siemens Healthineers while he assists NuVera with developing and marketing products that directly compete with the Company.  As

such, Siemens Healthineers likely will be successful on this claim.

### C.      A Balancing of the Equities Favors Granting Preliminary Injunctive Relief

Siemens Healthineers has demonstrated a likelihood of success on the merits for each of its claims. However, even if the Court were to find that Siemens Healthineers had only raised "sufficiently serious questions going to the merits of each claim", the Court should still issue the requested temporary restraining order and preliminary injunction because a balance of the equities tips in favor of Siemens Healthineers.  By this filing, Siemens Healthineers seeks to maintain the status quo and prevent Medigo from breaching his contractual obligations and fiduciary duties and from engaging in tortious and unfair business practices. The post-employment restrictions on Medigo are reasonable and narrowly tailored, as he explicitly acknowledged (and described *supra* at Part 1.B.2 at pp. 11-12).  Moreover, the Agreements, the enforcement of which Siemens Healthineers paid Medigo $405,000, do not prevent Medigo from working in his profession.

On the other hand, if the Court were to deny the request for immediate equitable relief, Medigo will be allowed to unfairly compete with Siemens Healthineers using the Company's own confidential and trade secret information, thereby undermining the investment of substantial time, resources, and goodwill that it developed in its customer and business relationships.  As such, the balance of equities decidedly weigh in favor of Siemens Healthineers.  See Marsh USA Inc. v. Schuhreimen, 183 F. Supp. 3d 529, 536-37 (S.D.NY. 2016) (granting preliminary injunction where defendant was unlikely to suffer "great hardship … if he was prevented for one year from soliciting" the plaintiffs' clients, and further observing that plaintiff could have "face[d] the prospect of losing business to a major competitor, transported by a high-level company official").

## II.      SIEMENS HEALTHINEERS SHOULD NOT BE REQUIRED TO POST BOND

Rule 65(c) of the Federal Rules of Civil Procedure confers on the Court broad discretion to the court to set the amount of the bond or even dispense with the bond altogether.  See Doctor's

Assocs., Inc. v. Stuart, 85 F.3d 975, 985 (2d Cir.1996).  In cases where the non-movant has not shown a likelihood of harm, the court may properly set no bond.  See id.  In this case, Medigo cannot establish that he will be harmed if a bond is not posted.  As set forth in Section 7 of the Confidentiality Agreement, Medigo acknowledged that Siemens Healthineers is entitled to a temporary restraining order and to an injunction enjoining his violation of the restrictive covenants "without posting any bond whatsoever" and, if a bond is required, "then a cash bond of $1,000 shall be sufficient".  See Singas Famous Pizza Brands Corp. v. New York Advert. LLC, No. 10 Civ. 8976, 2011 WL 497978, at *12 (S.D.N.Y. Feb. 10, 2011); see also Marsh USA Inc. v. Karasaki, No. 08 Civ. 4195, 2008 WL 4778239, at *21 (S.D.N.Y. Oct. 31, 2008); Iannucci v. Segal Co., Inc., No. 06 Civ. 4720, 2006 WL 8407380, at *6 n. 4 (S.D.N.Y. June 27, 2006).

## III.   THE COURT SHOULD GRANT EXPEDITED DISCOVERY

Courts in this district have often granted expedited discovery in cases involving restrictive covenants.  See, e.g., Uni-World Capital, 43 F. Supp. 3d at 241 (expedited discovery permitted in non-compete case); Nebraskaland, Inc. v. Brody, No. 09 Civ. 9155 (DAB), 2010 WL 157496, at *1 (S.D.N.Y. Jan. 13, 2010); DAG Jewish Directories, Inc. v. Y & R Media, LLC, No. 09 Civ. 7802 (RJH), 2010 WL 46016, at *1 (S.D.N.Y. Jan. 7, 2010).Here, Siemens Healthineers seeks the prompt deposition of Medigo concerning the recruitment and hiring of Medigo and the nature of his work at NuVera, as well as the production of limited documents.  The production should include all communications between Medigo and anyone acting in concert with him or on his behalf and any Siemens Healthineers customer with whom Medigo worked or with whom Medigo shared and/or obtained confidential information during his employment.  Only Medigo knows the full extent of his activities in violation of the Separation and Confidentiality Agreements and it will be impossible for Siemens Healthineers to ascertain the full extent of the misconduct without deposition testimony and document production.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Siemens Medical Solutions USA, Inc. respectfully requests that the Court grant its motion for a temporary restraining order, preliminary injunction, and expedited discovery, and for such other and further relief as the Court deems just and proper.

Date:   November 17, 2020
        New York, New York

                                                */s/Eric Savage*
                                                _____
                                                Eric A. Savage, Esq. (ES4709)
                                                Gary Moy, Esq. (GM7547)
                                                LITTLER MENDELSON, P.C.
                                                900 Third Avenue
                                                New York, New York 10022.3298
                                                212.583.9600

                                                *Attorneys for Plaintiff Siemens Medical*
                                                *Solutions USA, Inc.*