UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIEMENS MEDICAL SOLUTIONS USA, INC., <br><br> Plaintiff, <br><br> -against- <br><br> ANTHONY MEDIGO, <br><br> Defendant. | Civil Action No. 20 cv 9634 <br><br> **DECLARATION OF NIKKI GAINEY** |

NIKKI GAINEY, of full age, hereby declares pursuant to 28 U.S.C. § 1746:

1. I am Senior Vice President - Strategy & Business Development, Ultrasound FOR Siemens Medical Solutions USA, Inc. ("Siemens Healthineers")  I have personal knowledge of the within matters.

2. I joined Siemens Healthineers in September 2016 as the Executive Director, Business Development and Strategy, Global Ultrasound.  In January 2018, I was promoted to Vice President, Commercialization & Business Development, Global Ultrasound; my current position represents a title change that was made in January 2019.  Since joining the company, I have been deeply involved in business development and strategy for Siemens Healthineers' Global Ultrasound business, which includes the Acuson 2D Intra-Cardiac Echo Catheter (the "2D Catheter") and then the AcuNav Volume Catheter.

**A.    Medigo's Work at Siemens Healthineers**

3. I began working with defendant Anthony Medigo ("Medigo") when he was in Advanced Therapies, and more closely as he became directly involved in our ICE catheter products.  My role focused on business development and the development of relationships with

potential business partners like Boston Scientific and Edwards Lifesciences. As discussed below, Medigo was involved in hiring and training the sales team, putting together training programs for hospitals and business partners, and other tactical aspects which aligned with the strategy that the company developed.

4. Siemens Healthineers sells the 2D ICE catheter exclusively to Biosense Webster, Inc. ("BWI") which incorporates the catheters into its equipment that it then sells. Our arrangement with BWI has been in place for approximately fifteen years and is a significant source of income for Siemens Healthineers. In our last fiscal year, which ended on September 30, 2019, our sales of the 2D Catheter were approximately $192 million.

5. By virtue of his role, Medigo is intimately familiar with the business arrangement that we have with BWI. He knows the individuals we deal with at BWI as well as our costs and profit margin under our current arrangement. It would be possible for BWI to change suppliers if it chooses and we are very concerned that through his employment for NuVera, Medigo would attempt to persuade BWI to end its relationship with us. BWI is the exclusive distributor of our 2D catheter, so permitting a competitor to have access to the confidential information concerning our business arrangement with BWI would place a significant aspect of our business in jeopardy

6. Medigo led the commercialization efforts for the AcuNav Volume ICE Catheter and we have been working with other companies, including Boston Scientific and Edwards Lifesciences to expand the market. As part of the market entry for the AcuNav Volume ICE Catheter, Medigo was fully engaged in our efforts to develop a business relationship with those two companies. He knew how we were working to become a partner of choice for each of them. We would never want a competitor to know about our business relationship with them or to have access to information which would enable a competitor to undercut us and hinder our sales effort and business relationships.

7. Further, Medigo was engaged with having Edwards Lifesciences personnel attend our training programs for the AcuNav Volume ICE Catheter and how we were involving Mentice in the joint simulation training program. Medigo was intimately familiar with these plans and our strategy.

8. Another critical part of Medigo's work was his establishing relationships with what we call "key opinion leaders" or "KOLs". The KOLs are doctors who were seen as likely to want to use our ICE Catheters, hospitals which might be interested in using the device and purchasing equipment which incorporates our product, and device manufacturers which might be interested in incorporating the ICE Catheter into their devices. Again, knowledge of who the KOLs are, their opinions of our products, their influence over product purchases and the factors they would consider, articles they might publish and the like, are extremely confidential and not something we would never want to see in the hands of a competitor.

9. In addition to having detailed understanding of our current product offerings, Medigo came to be aware of our plans for the next-generation ICE catheter, and when it is anticipated for introduction to the market. Access to this information is something that a competitor would want to know since it could affect their marketing and product development plans.

10. In addition, Medigo knew of, and helped develop our plan for going to market, plans for expansion of sales of ICE catheters outside the United States, and training for sales personnel and training for the cardiologists who would be using the equipment. Again, access to this information is something we consider highly confidential and make sure to keep out of the hands of competitors.

11. In March 2020, Siemens Healthineers engaged in a temporary recall of the AcuNav Volume Catheter from the market to investigate a limited number of adverse events arising from use of the device. Medigo advocated that we not put the AcuNav Volume Catheter under recall, but once

the decision was made, he participated in the process and dealings with the FDA, all of which is highly confidential.

12. However, even with the recall in place, we continue to sell to BWI the 2D Catheters, which are not subject to the voluntary recall. Moreover, doctors are still allowed to use the AcuNav Volume ICE Catheter on an emergency use basis. If a doctor thinks it imperative to use the AcuNav ICE Catheter, he or she will work with our regulatory and quality team to obtain the approval from the hospital. Further, even during the recall, we are actively maintaining and developing our relationship with Boston Scientific, Edwards Lifesciences and Mentice, a company which provides training education and procedural development for new and existing devices, as we plan to reemerge in January 2021, an initiative that I head. The plans and strategies we developed for all our products, including the AcuNav Volume ICE Catheter remain the core of our plans going forward and are highly protected within the company.

**B. Medigo's Employment at NuVera and Violation of the Confidentiality Agreement**

13. Medigo called me on or shortly after September 18, 2020 to tell me that he had joined NuVera Medical Inc. ("NuVera"), a California-based company which describes itself on its website as "engaged in the development of what it describes as real-time 3D intracardiac echocardiography (4D ICE)". By virtue of this description, NuVera has made clear that it is positioning itself as a competitor and apparently intending to reduce our share of the market for the AcuNav Volume ICE Catheter, but also for the 2D Catheter.

14. I first learned of Medigo's affiliation with NuVera when he participated in a September 18 webinar entitled "What's New In Structural Interventions" for which NuVera was a sponsor. Medigo and Todor Jeliaskov of NuVera were identified on the registration confirmation as the contacts at NuVera.

4

15. News of Medigo's new job had circulated within our company shortly after that because we saw announcement of his new position on LinkedIn shortly after the webinar. I was surprised that he had moved to a direct competitor so when he called me, I asked him if he had a non-compete with us, to which he replied, "I don't think so". He then stated that Siemens Healthieers was no longer in the marketplace due to the recall, so that he did not believe that he was competing with Siemens Healthineers and, as best as I can recall what he said, he "wasn't going to worry about it".

**C.   Danger to Siemens Healthineers From Medigo's New Employment**

16. It is my belief that Medigo's employment at NuVera places him in a position where he will be expected to, and will provide assistance to NuVera in competition with Siemens Healthineers, and in particular our AcuNav Volume ICE Catheter, with which NuVera's product will compete directly. In fact, it is hard to understand what duties he could perform or what value he would bring to NuVera as its Chief Commercial Officer if he were not helping that company to compete with us.

17. I have noted above all of the different types of highly confidential information that Medigo has developed and accessed during his work on ICE catheters while employed at Siemens Healthineers. Our fear is that Medigo's employment at NuVera places him in a position by which our confidential information will inevitably be disclosed to NuVera.

18. Confirming our concern is when I learned during a call on Oct 22, 2020, I learned that NuVera had contacted Dr. Mani Vannan at Piedmont Hospital in Atlanta. Dr. Vannan is a premier echocardiograher, one of our most important KOLs, and a very strong advocate for Siemens Healthineers ultrasound. To my knowledge, the only way Medigo knows Dr. Vannan is through his work at Siemens Healthineers.

19. Dr. Vannan told me that he had received a good demonstration from NuVera on October 21 in which they showed him what they were working on, including their NuVision ICE Catheter. He told me that their 3D and their 2D images were spectacular. He did not tell me who had presented from NuVera, but it was clear to me that NuVera positioned their NuVision ICE Catheter as superior to the Siemens Healthineers catheter portfolio.

### G. Immediate Injunctive Relief is Necessary

20. If Medigo is allowed to continue with employment with NuVera, I believe that it will cause irreparable harm to Siemens Healthineers. Once lost, our trade secrets cannot be restored. For NuVera to have Medigo it its employ, with access through him to information about our marketing strategies, relations with our KOLs, product strengths and weaknesses, marketing and global expansion plans, profit margins and the like poses a grave commercial threat. If Medigo discloses any of this information to NuVera, or if he uses the information in his possession in efforts to lure away our KOLs such as Dr. Vannan, it would create a significant competitive problem which cannot be repaired. Once information is lost to a competitor, it cannot be retrieved and the competitor cannot un-learn it.

21. Moreover, since Medigo is party to (and helped formulate) our long-range planning, disclosure of that information would not just cause us competitive harm now, but is likely to influence how NuVera competes with us in the future. The losses that this will cause cannot be fully measured.

22. As a company, Siemens Healthineers has not consented to, and do not consent to, Medigo's employment with a direct rival before the expiration of his restricted period on July 1, 2021 or for one year after he began working for NuVera in violation of the Confidentiality Agreement. The company believes that the one-year restricted period reasonably limits him from

engaging in immediate competition based on present-day knowledge of all aspects of our business in this area.

23. As discussed above, Medigo has deep and wide-ranging knowledge of all aspects of Siemens Healthineers' products, near-term and long-term marketing plans, financial information, customer relations and other aspects that he generated, or to which he had access, during his employment and his leadership of our AcuNav Volume product.

24. As a company, Siemens Healthineers believes that Siemens Healthineers will suffer irreparable injury without a temporary restraining order and preliminary injunction because Medigo will be in a position to facilitate NuVera's competition with our AcuNav Volume ICE Catheter and our 2D Catheter. As long as Medigo works for NuVera during the restricted period, our competitive advantage is lost, can never be taken back, and in our view, cannot be compensated with money damages.

25. Siemens Healthineers therefore respectfully requests that a temporary restraining order and preliminary injunction be issued enjoining Medigo from working for NuVera until July 1, 2021, as extended by any period of time in which Medigo has already been employed by NuVera, and requiring him to abide by all other provisions of the Confidentiality Agreement and the Separation Agreement.

26. I hereby declare under penalty of perjury that the foregoing is true and correct.

Date: November 15, 2020

_[signature]_
Nikki Gainey

4842-9616-9426.1 069996.1031

7