EXHIBIT A

# SENIOR MANAGER RESTRICTIVE COVENANTS, CONFIDENTIALITY AND INTELLECTUAL PROPERTY ASSIGNMENT AGREEMENT

As a condition of employment and in consideration of the parties' mutual covenants and promises herein, you, the undersigned "**Employee**", and the undersigned "**Company**" agree to the terms of this Senior Manager Restrictive Covenants, Confidentiality and Intellectual Property Assignment Agreement (hereafter "**Agreement**"), for the benefit of Employee and the Company (as defined below), collectively the "**parties**":

1. **Purpose and Definitions**

   **(A)**   Subject to and in reliance upon Employee's acceptance of the terms offered in this Agreement, Company will employ Employee, or continue the employment of Employee, in a position of special trust and confidence wherein Employee will be provided with, or have access to, among other highly-sensitive information, one or more of the following:  Confidential Information; interaction with customers, vendors, and/or other important business relationships (as well as proprietary and confidential information, including strategic and tactical planning, related to such relationships) for the purpose of developing goodwill for the business; specialized training related to the Company's business; and/or, intellectual property used in the Company's business (such as research, inventions, product-related information or proprietary systems and processes).  Employee's services are of special, unique and extraordinary value to the Company.  The parties stipulate that the foregoing characteristics of Employee's employment by Company give rise to the need for the restrictions provided for in this Agreement and would give Employee an unfair competitive advantage, and subject the Company to potentially materially adverse impact, were it not for Employee's obligation to abide by the covenants contained in this Agreement.

   **(B)**   The following definitions will apply in this Agreement:

   i.   "**Cause**" shall be defined as: (i) dishonest or illegal conduct, (ii) breach of Employee's obligations under this Agreement or under any other agreement between Employee and the Company, (iii) conduct in violation of Company policy or (iv) insubordination or willful failure to perform reasonably assigned duties or any lawful direction of management, other than failure due to physical or mental illness.

   ii.   "**Company**" refers to the undersigned business entity that employs Employee within the Siemens Healthcare family of companies, and any other corporation, entity or organization that is owned and/or controlled in material part, directly or indirectly, by Siemens AG or an affiliate thereof, to which Employee's employment is transferred or reassigned, or to which Employee provides material services in the course of his/her employment.  The "**Company Group**" means any legal entity that is under common ownership or control with the Company or in which Siemens AG or Siemens Healthcare GmbH owns a controlling interest, inclusive of Siemens AG and Siemens Healthcare GmbH themselves.

   iii.   "**Competing Business**" refers to any business entity that develops, makes, is known to be developing, or offers a product or service that competes with, or is reasonably

expected (within a reasonable period of time) to compete with, a product or service of the Company.  A product or service will be considered competitive if it would replace, displace or otherwise interfere with the business opportunities for the Company's product(s) or service(s) of the same, similar or comparable nature.

iv. "**Competing Services**" refer to services that either (i) are the same as, similar to, or comparable in function or purpose to the services Employee provided, worked to develop, managed, or supervised as an employee of the Company in the Look Back Period, or (ii) involve the sale, servicing or development of a product or service that competes with a product or service (existing or under development) that Employee had involvement with or was provided Confidential Information about during the Look Back Period, (iii) involve material involvement in business dealings with a Covered Customer on behalf of a Competing Business, or (iv) would otherwise be likely to involve the use or disclosure of Confidential Information.

v. "**Confidential Information**" refers to information, or compilation of information, in any form (tangible or intangible), related to the business of the Company or Company Group that Employee acquires or to which she has exposure during the period of employment that is not readily available to the public through proper means and that is not authorized for public disclosure by the Company.  Examples of Confidential Information include, without any limitation:  business plans and analysis; customer and prospective customer lists; emerging commercial opportunities; research and development data; internal marketing plans; pricing development information; business information regarding new products or transactions or relationships with third parties which has not as yet been released or made generally known to the public (including strategic and tactical planning information or knowledge); information concerning unpatented or otherwise non-public Proprietary Works; and trade secrets of the business.  Subject to the terms under which it is provided to the Company, information entrusted to the Company by third parties in confidence shall be treated as Confidential Information.  The fact that information is shared by Company with a third party in in connection with a potential (or actual) business transaction will not cause it to lose protection as Confidential Information, and the presence of items of public information in an otherwise confidential compilation of information will not cause the compilation (or any of the included Confidential Information) to lose protection as Confidential Information in its compiled form or otherwise.

vi. "**Covered Customer**" refers to any person or entity doing business with the Company, negotiating to do business with the Company, or to whom a proposal to do business is pending at the time Employee's employment with the Company ends, and that Employee has business dealings with, manages business dealings with, or is provided (or had access to) Confidential Information about, during the Look Back Period.  If Nebraska law controls then this definition shall be modified to cover only customers with whom Employee had personal contact or dealings in the Look Back Period.  If New York law controls then this definition shall be modified to exclude customers that Employee had a relevant and established business relationship with prior to employment with the Company that Employee brought to the Company.  If Oklahoma law controls then this definition shall be modified so that it is limited to established customers of the Company.

vii.     "**Look Back Period**" refers to the last two years of Employee's employment with the Company, or such lesser period as the Employee has been employed with the Company if the Employee has been employed with the Company for less than two years at the time of his or her termination; or, if the foregoing is not enforceable, then such lesser period as a court or arbitrator finds enforceable.

viii.    "**Non-Compete Payment**" shall mean a monthly payment equal to Employee's average monthly compensation in the previous year (or such lesser period as Employee may have been employed) based on Employee's total base salary and commissions (if commissions are applicable) and excluding incentive bonuses, benefits, stock options or awards, and any other form of indirect or deferred compensation. Such payment shall be less ordinary taxes and withholdings consistent with Company policies and procedures. Such payment shall be less any compensation that Employee receives or has an unqualified right to receive from Company or any other employer (as a contractor or employee) during the Restricted Period, including but not limited to any severance payments made to Employee by Company, which compensation shall be credited against and reduce the payments that would otherwise have been due under Paragraph 5(F).

ix.     "**Proprietary Works**" refers to all: inventions, improvements, ideas, discoveries, business methods, and developments (whether patentable or not and whether reduced to practice or not); databases; mask works; original works of authorship, and other materials for which copyright protection may be obtained, including but not limited to computer programs, artistic works such as graphs, drawings, blueprints, CAD files or images and articles (whether reduced to tangible form and subject to registration or not); trade secrets; and, any other forms of legally recognized intellectual property to which rights of private ownership or control can be held; created or conceived by Employee, alone or with others, during working hours or outside of working hours.

x.      "**Restricted Area**" refers to those counties and states within the United States, and those comparable political subdivisions of other countries, where that portion of the Company's business that Employee is involved in during the Look Back Period does business or is actively planning to do business at the time Employee's employment with the Company terminates; or, if the foregoing is not fully enforceable then such lesser area as a court or arbitrator finds enforceable.[1] Due to the nature of Employee's position, unless Employee can prove otherwise by clear and convincing evidence as to some particularly identified geographic area at issue, it shall be presumed that the portion of Company's business that Employee is involved in encompasses the entire United States, each county and state within the United States, and each additional country where the Company does business or is actively planning to do business at the time Employee's employment with the Company terminates. It is specifically

---

[1] If Louisiana law controls, then the Restricted Area shall be understood to include the following specific Parishes of Louisiana: Acadia, Allen, Ascension, Assumption, Avoyelles, Beauregard, Bienville, Bossier, Caddo, Calcasieu, Caldwell, Cameron, Catahoula, Claiborne, Concordia, Desoto, East Baton Rouge, East Carroll, East Feliciana, Evangeline, Franklin, Grant, Iberia, Iberville, Jackson, Jefferson Davis. Jefferson, Lafayette, Lafourche, LaSalle, Lincoln, Livingston, Madison, Morehouse, Natchitoches, Orleans, Ouachita, Plaquemines, Pointe Coupee, Rapides, Red River, Richland, Sabine, St. Bernard, St. Charles, St. Helena, St. James, St. John the Baptist, St. Landry, St. Martin, St. Mary, St. Tammany, Tangipahoa, Tensas, Terrebonne, Union, Vermillion, Vernon, Washington, Webster, West Baton Rouge, West Carroll, West Feliciana, Winn.

understood that it is not unreasonable for the foregoing geographic limitation to cover every state within the Unites States, and/or an entire foreign country where the Company does business given the national and international scope of the Company's business and Employee's position as a management level employee.

      xi.     "**Restricted Period**" is a period of one (1) year following the date upon which Employee's employment with the Company ends, without regard to which party ended the employment relationship or why it was ended; or, if the foregoing is not enforceable, then such lesser period as a court or arbitrator finds enforceable.

      xii.    "**Solicit**" and related terms such as "**solicitation**" refer to a communication or action undertaken by Employee, or persons at Employee's direction or under his or her control, that can reasonably be expected to induce or encourage a particular action or reaction (such as ending employment with the Company or diverting a business opportunity away from the Company) irrespective of which party first initiated contact or communication.

**2. Duty of Loyalty and Conflicts of Interest**

    (A)    Employee will dedicate his or her full working time to the Company, and will not perform work for another party for personal gain (outside employment) without first receiving express written approval from senior management of the Company to do so.  Company may withhold approval only if it has a good faith basis to believe the outside employment, outside Employee's ordinary working hours with the Company, would create a conflict of interest or interfere with Employee's ability to perform his or her duties for the Company.  Employee will comply with Company's conflict of interest and/or code of conduct policies at all times, and will provide the Company with notice of any business opportunities that are related to the Company's business or to any business areas known to Employee to be subject to planning by the Company to potentially enter within a reasonable period of time.  It will be a conflict of interest for Employee to pursue business activities that compete with Company or to engage in any conduct that would be prohibited activity during the Restricted Period under Paragraph 5 (and its subparts) except where it is authorized conduct undertaken in the ordinary course of employment duties for the Company's benefit.  If Employee questions whether a business opportunity or course of conduct is prohibited under this Agreement or would create a conflict of interest, he or she will inquire with the Company's Legal Department in writing before pursuing the opportunity or course of conduct.

    (B)    Employee agrees to use the Company's resources (such as personnel, tools, information, third-party relationships and equipment) to further the business of the Company and not to compete, prepare to compete, or otherwise knowingly cause harm to the Company. Employee's authorization to access Company computer systems is limited to the systems and purposes approved for Employee's position and ends entirely upon the termination of employment.  Access and/or use of the Company's computer systems to compete or prepare to compete, or to otherwise knowingly cause harm to the Company is never authorized access and strictly prohibited.  Gaining or attempting to gain unauthorized access to the Company's computers may result in both criminal and civil penalties.

3.  **<u>Non-Disclosure of Confidential Information</u>**

(A)     During employment and for so long thereafter as the information continues to qualify as Confidential Information under this Agreement, Employee shall not engage in any use or disclosure of Confidential Information except where it is (a) required in the ordinary course of the performance of Employee's employment duties and undertaken for the benefit of the Company, or (b) expressly authorized in writing by the Company.  In the event that applicable law requires that a time limit be placed on this nondisclosure covenant for it to be enforceable, then this nondisclosure obligation shall expire 30 months after the end of Employee's employment with the Company for Confidential Information that does not qualify as a trade secret.  However, information that qualifies as a trade secret will not have this time limitation and will remain protected for so long as it otherwise qualifies for protection as a trade secret under applicable law.  Employee will use all reasonable precautions to assure that Confidential Information (including written materials, formulae, data (including any clinical, other experimental or engineering), models, mechanisms, devices, drawings, designs, in each case including drafts), regardless of form or media, are protected and kept from unauthorized persons and unauthorized disclosure and use.

(B)     Notwithstanding anything in this Agreement to the contrary, nothing in this Agreement shall be construed to prevent Employee from communicating with a relevant governmental law-enforcement authority (the Equal Employment Opportunity Commission, the Securities and Exchange Commission, the Department of Labor, or another relevant agency) for the purpose of reporting an event that Employee reasonably and in good faith believes is a violation of law, or from cooperating with or participating in a legal proceeding relating to such alleged violations; provided, however, that Employee shall otherwise honor the purpose of this Agreement's confidentiality obligations and limit disclosures of Confidential Information that fall within the foregoing exception to Employee's attorney and the government entity involved in the matter at issue, unless otherwise compelled by law.  If Employee receives a subpoena, court order, or similar directive that Employee believes compels disclosure of Confidential Information, Employee will provide the Company's legal department as much advance notice as is possible under the circumstances so that it may take steps to protect its Confidential Information unless such notice is prohibited by law.  Nothing in this Agreement shall be construed to permit or condone illegal conduct such as unauthorized access to Company computer systems, theft of Company property, or misappropriation of trade secrets.

(C)     All records of Confidential Information compiled or maintained by the Company, regardless of the form in which they are stored, shall at all times be and remain the sole property of the Company, including social media data related to the Company.  Employee will disclose, deliver, and return promptly to the Company all such records of Confidential Information (regardless of form or media) at any time the Company may request, but no later than the termination of Employee's employment, and will not retain any copies.  Where permitted by law, Employee authorizes the Company to inspect, and will cooperate in facilitating the inspection of, any storage device or account in Employee's possession or control that has been used to conduct Company business or to which Confidential Information has transferred or communicated so that Company can confirm Employee has complied with this Agreement.  If Employee is uncertain whether any particular material or information is Confidential Information, Employee will

5

consult the Human Resources Department for resolution.

**4. <u>Inventions and Other Proprietary Works</u>**

(A) Employee agrees that all inventions and other Proprietary Works which are conceived or made by Employee alone or with others, whether or not during usual business hours, during the period of Employee's employment by the Company, shall belong to the Company or its designee, unless specifically disclaimed by the Company, in writing provided that such are related to Employee's work with the Company, were created or conceived with the assistance of the Company Group's property or resources (such as Confidential Information), or are related in any manner to the Company Group's business: (i) actually engaged in or (ii) anticipated at the time of termination of Employee's employment by the Company; and Employee agrees to:

(1) promptly and fully disclose such inventions and other Proprietary Works to the Company;

(2) assign to the Company or its designee, its successors, assigns, or nominees for its/their sole use and benefit, all of Employee's right, title, and interest in and to such inventions and other Proprietary Works for the United States and all foreign countries, in accordance with Paragraph 4(B) below.

(B) Employee hereby fully and finally assigns, sells, transfers and releases to the Company or its designee all of his/her right, title and interest in and to all inventions and other Proprietary Works (and derivatives therein and thereto), current and future, required to be disclosed by the terms of this Agreement; provided, however, that the agreement to assign inventions provided for herein shall be construed so as to comply with any limitations on the assignment of an invention that are required by applicable law in order for the agreement to be binding on Employee and not declared void.[2]

(C) Employee agrees that all Proprietary Works covered by Section 4(B) are the sole property of the Company, and the Company is free to use them in any way, in its discretion. The rights assigned to Company under Section 4(B) are all legal rights of any kind or character, including (but not limited to) moral rights, mask work rights, sui generis database rights, and all other rights of ownership or control regarding the Proprietary Works throughout the world. The

---

[2] If Employee resides in California, the invention assignment obligation of this Agreement shall be applied so as to comply with Cal. Lab. Code, § 2870 and will not require the assignment of Employee's rights in an invention for which no equipment, supplies, facility, or trade secret information of the Company was used and which was developed entirely on Employee's own time, unless (a) the invention relates at the time of conception or reduction to practice of the invention, (i) to the business of the Company, or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by Employee for the Company. In the event any of the following laws control, Employee is given notice that the invention assignment shall be deemed limited to the extent necessary to create a binding assignment under the law: Del. Code Title 19 § 805; Illinois 765 ILCS 1060/1-3; Kan. Stat. Section 44-130; Minn. Statutes, 13A, Section 181.78; N. Car. General Statutes, Art. 10A, Chapter 66, Commerce and Business, § 66-57.1; Utah Code § 34-39-1 through 34-39-3; Wash. Rev. Code, Title 49 RCW: Labor Regulations, Chapter 49.44.140.

rights of the Company may be assigned, transferred, licensed, or sold, in whole or in part, subject to applicable law, without Employee's consent, upon such terms as may be determined by the Company, including without limitation to any successor in interest to the Company, successor in interest to any of the assets or business of the Company, or any third party.

(D)     At any time the Company (or its successor in interest) requests, either during Employee's employment or after termination thereof, and without charge, but at the Company's (or its successor's) expense, Employee agrees to execute, acknowledge and deliver all such further papers, including applications for patents, copyright registration, or other statutory protections, and to perform such other lawful acts as, in the opinion of the Company, may be necessary or appropriate to obtain or maintain patents, copyright rights, registrations or statutory protections for the assigned Proprietary Works in any and all countries and to vest title thereto in the Company, its successors, assigns or nominees.  Employee's obligations under this Agreement shall continue beyond the termination of Employee's employment with respect Proprietary Works made or conceived by Employee during the period of Employee's employment and belonging to the Company or Company Group.  The Company Group shall be treated the same as the Company for purposes of all rights, privileges and powers conveyed, created or granted by Section 4 of this Agreement.

(E)     If despite this Agreement Employee retains ownership of any Proprietary Works that are incorporated into any product or service of the Company, Employee hereby grants Company a worldwide, irrevocable, royalty-free license to incorporate such Proprietary Works into the products and services of the Company (and its affiliates) at Company's discretion without any attribution or fee owed to Employee.  This Agreement supplements, and does not reduce or eliminate any rights Company would otherwise have in the work product of Employee under the "work for hire" doctrine, the U.S. Copyright Act, 17 U.S.C. §§ 101 - 810, or any other applicable laws.

(F)     Except as attached as expressly disclosed in writing as an attachment to this Agreement, Employee is not an owner of any right, title or interest, nor is Employee the holder of any beneficial interest in, to or under any unpatented inventions, patent applications, patents, works in which a copyright right is claimed, applications for copyright registration, copyright registration, or trade secrets.

**5. <u>Protective Covenants</u>**

The parties stipulate that the confidentiality obligations of this Agreement, standing alone, are insufficient to protect the Company's trade secrets and other legitimate business interests.  Certain activities would by their nature, even with good faith efforts to avoid it, result in damage to Company's trade secrets, unfair competition and other irreparable harm to Company and its affiliates.  It is in the interest of both parties to identify and avoid the activities that are of this nature.  Accordingly, the parties have identified them below and agree that the following restrictions are a reasonable and necessary to protect the Company's and its affiliates' legitimate business interests:

7

**(A)     Non-Solicitation of Customers.**

To protect the Company's trade secrets, customer goodwill and other business interests, during the Restricted Period, Employee will **not** individually, or through collaboration with or by the direction or control of any others, knowingly participate in soliciting a Covered Customer for the purpose of (a) diverting business opportunities away from the Company, (b) causing the Covered Customer to avoid, stop or reduce business activities with the Company, or (c) inducing the Covered Customer to do business with a Competing Business.  Additionally, Employee will not knowingly engage in conduct or communications with a Covered Customer likely to adversely affect the Covered Customer's opinion regarding the Company (or any of its affiliates) and/or any of their respective products or services.  If California law controls, the restrictions provided for in this paragraph shall be modified to prohibit only solicitation activity by Employee that involves or is aided by the misappropriation of Company trade secrets.

**(B)     Non-Interference with Providers.**

To protect the Company's trade secrets, goodwill and other business interests, during the Restricted Period, Employee will **not** individually, or through collaboration with or by the direction or control of others, knowingly solicit vendors, suppliers, or independent contractors providing goods or services that have critical value to the Company to the Company that Employee gained knowledge of through employment with the Company and to substantially reduce conducting business with the Company or to otherwise alter an ongoing business relationship with the Company in manner that is harmful to the Company's business interests.  If California law controls, the restrictions provided for in this paragraph shall be modified to prohibit only solicitation activity by Employee that involves or is aided by the misappropriation of Company trade secrets.

**(C)     Non-Interference with Employees**

To protect the Company's trade secrets, workforce stability and other business interests, during the Restricted Period, Employee will **not** individually, or through collaboration with or by the direction or control of others, knowingly solicit, or help another person solicit, any employee of the Company that Employee gained knowledge of through his or her employment with the Company to terminate his or her employment relationship with the Company, or modify such relationship to the detriment of the Company; provided, however, that nothing herein shall cover generalized solicitations for employees by use of advertisements in the media (including, without limitation, trade media) or engaging search firms to engage in solicitations so long as such efforts are not targeted or focused on the employees of the Company or any of its affiliates.

**(D)     Hiring Away Employees**.

To protect the Company's trade secrets, workforce stability and other business interests, during the Restricted Period, Employee will **not** individually, or through collaboration with or by the direction or control of others, knowingly hire away, or assist a Competing Business in hiring away an employee of the Company that Employee gained knowledge of through his or her employment with the Company, nor will Employee attempt to do so; provided, however, that

nothing herein shall cover generalized solicitations for employees by use of advertisements in the media (including, without limitation, trade media) or engaging search firms to engage in solicitations so long as such efforts are not targeted or focused on the employees of the Company or any of its affiliates. Unless Employee can show otherwise by clear and convincing evidence, it shall be presumed that the former Company employee at issue has been "hired away" if at the time the individual receives an offer from the hiring party the individual is an employee of the Company or is and individual who chose to leave the employment of the Company within the preceding ninety (90) days. If California law controls, the restriction provided for in this paragraph shall not apply.

**(E)** **Non-Competition Restriction**

To protect the Company's trade secrets and other business interests, during the Restricted Period, Employee will not (as an employee, consultant, owner, officer, director, partner, or otherwise) knowingly participate in, manage, supervise or provide Competing Services for a Competing Business in the Restricted Area. The parties expressly stipulate that the foregoing restriction (the "**Non-Compete Restriction**") is necessary because the other restrictions provided for in this Agreement are insufficient to prevent unfair competition and protect the Company's trade secrets and other legitimate business interests standing alone, and because Employee is of special, unique, and extraordinary value. If California law controls, the restriction provided for in this paragraph shall not apply.

**(F)** **Non-Compete Payment**.

If Employee's employment with Company is terminated by the Company without Cause and Employee is unable to gain new employment during the Restricted Period solely because of the Non-Compete Restriction, the Company will provide Employee with a Non-Compete Payment (as defined above) for each month s/he is unable to gain new employment during the Restricted Period; provided, however, that this monthly payment shall have the following conditions and limitations:

i. for each month after the first month that Employee seeks payment Employee must search diligently for new employment that does not violate the Non-Compete Restriction and submit a written report to the Company on or before the 15th day of the month following the month for which Employee seeks payment; this report must explain Employee's efforts to find new employment, identify the companies s/he sought employment with, and explain why s/he believes the Non-Compete Restriction caused him/her to be unable to get new employment;

ii. Employee will not be eligible for payments if (a) Employee's employment with the Company ends due to a termination of employment that is part of a sale or merger where Employee has been offered employment with the acquiring or surviving entity (at a similar, aggregate compensation level), or (b) the Company discovers after Employee's employment has ended that Employee has engaged in conduct that would have warranted termination for "cause" during employment;

    iii. Employee will cease to be eligible for payments if, at any time during the Restricted Period, (a) Employee violates this Agreement or any other contractual obligation to the Company, (b) Employee pursues a legal claim or action to have the Non-Compete Restriction deemed void or unenforceable as written, or (c) a portion of the Non-Compete Restriction deemed material by the Company is found unenforceable by a court of law or arbitrator(s);

    iv. If at any time during the Restricted Period the Company releases Employee from the Non-Compete Restriction, the Company's obligation to continue making Non-Compete Payments to Employee (other than the first month's Non-Compete Payment) shall immediately end; however, the Company's decision to release Employee from the Non-Compete Restriction shall not eliminate the Company's obligation to make the first month's Non-Compete Payment which Employee acknowledges is adequate consideration for this Agreement; and,

    v. the monthly Non-Compete Payment will be made to Employee on or before the last day of the month following the month for which Employee submits a timely written report as required under this paragraph.

Notwithstanding anything herein to the contrary, the Company shall have the right to immediately stop making the Non-Compete Payments after the first payment is made if it, in the exercise of its discretion, determines that grounds for cessation of payments under the criteria identified above have occurred, or the Company elects to waive its right to continue to enforce the Non-Compete Restrictions. Accordingly, and notwithstanding anything herein to the contrary, in the event that Employee's employment with Company is terminated by the Company without Cause and Employee is unable to gain new employment during the Restricted Period solely because of the Non-Compete Restriction, the Company will provide Employee with a Non-Compete Payment for at least one month.

  **(G)** **Limits on Restrictions**.

Nothing in this Agreement shall be construed to prohibit (a) Employee from owning shares in a publicly traded company so long as such interest is less than 2% of the publicly traded shares in the Company and Employee's investment is a completely passive one where Employee has no meaningful involvement in the business affairs of the company, or (b) Employee's employment in a separately operated subsidiary or other business unit of a diversified company that would not be a Competing Business but for common ownership with a Competing Business so long as written assurances regarding the non-competitive nature of the business and Employee's position that are satisfactory to the Company have been provided by Employee and Employee's new employer in advance.

  **(H)** **Reasonableness of Restrictions**

Employee acknowledges that his or her experience and abilities are such that compliance with this Agreement will not cause any undue hardship or unreasonable restriction on his or her ability to earn a livelihood and that the restrictions on his or her activities during and after employment do not prevent Employee from using skills in any business or activity that is not in competition with Company. Employee acknowledges that the Company is engaged in business

10

throughout the world, and unequivocally agrees that the duration and geographic scope of the restrictive covenants is reasonable in light of the position Employee holds and the geographically broad scope of doing business on such a global basis.  Employee further acknowledges that the Company conducts business through the Internet and other means of electronic connectivity of information ("other electronic means"), and that the scope of this provision is therefore co-extensive with the scope of the Company's business through the Internet and other electronic means.

The restrictions in Paragraphs 5 (A) – (D) are understood by the parties to have an inherently reasonable geographic limitation, or acceptable substitute for a geographic limitation, by their nature.  However, in the event that an additional geographic limitation is required for any one of these restrictions to be enforceable then the restriction that requires this additional geographic limitation shall be considered limited to the Restricted Area.

**(I)** **Clarification.**

In the event that the meaning of a material portion of a post-employment restriction applicable to Employee is not clear to Employee at the time his/her employment with the Company ends (such as the boundaries for applicable geographic area, scope of activity, or applicable time frame), Employee will promptly contact the Head of Human Resources of the Company in order to seek a clarification of the restriction prior to engaging in any activity that could reasonably be anticipated to fall within the restriction.  Employee understands that the failure to seek such a clarification may waive Employee's right to claim ambiguity as a defense to the enforcement of the restriction.

**6.** **Advance Notice and Confer Obligations.**

During employment and the Restricted Period, Employee will provide the Company (through the Head of Human Resources) with twenty one (21) days advance written notice prior to beginning employment with a Competing Business (even if self-employed), and will provide any such prospective employer with notice of this Agreement.  If requested, Employee will provide the Company with information about Employee's new or prospective position that is sufficient for Company to verify whether or not the new position would violate this Agreement.  Prior to engaging in any legal action to challenge the restrictions provided for in this Agreement, Employee agrees to provide the Company with written notice of his/her intent to challenge the enforceability of the agreement, and if requested by the Company, Employee agrees to meet with the Company and negotiate in good faith over agreed restrictions necessary to protect the Company's legitimate business interests in an effort to resolve disputed issues.  Employee acknowledges and agrees that the Company may elect to provide another party notice of this Agreement and an opinion about its applicability.  While Employee retains the right to also communicate his or her disagreement with such an opinion if Employee so disagrees, Employee recognizes the Company's legitimate business interest in expressing its opinion and consents to it doing so if it believes such is necessary.  Employee agrees that he or she will not assert any claim that such conduct is legally actionable interference or otherwise impermissible regardless of whether or not this Agreement is later found to be enforceable in whole or in part.

11

**7.     Remedies**

(A)     A violation of this Agreement by Employee would cause not only actual, quantifiable compensable damage, but also additional irreparable harm and continuing injury to the Company of a non-quantifiable nature, for which there would not be an adequate remedy at law.  Employee acknowledges and agrees that a violation of any of the Employee's obligations under this Agreement will cause or result in irreparable harm and damage to the Company and the full amount of such damages cannot be readily ascertained.  For this reason, the Company will be entitled to a temporary restraining order and to an injunction permanently enjoining and prohibiting violation hereof by the Employee or any person acting directly or indirectly on the Employee's behalf without posting any bond whatsoever (where permitted by law).  If a bond is required then a cash bond of $1,000 shall be sufficient.  The equitable relief provided in this section is not intended as an exclusive remedy, but will be in addition to, and not in limitation of, any other rights or remedies of the Company.  An election to obtain such equitable relief does not preclude any other remedies available to the Company at law, in equity or under this Agreement.

(B)     In the event Company loses an employee due, in whole or in part, to conduct by Employee that violates Paragraphs 5(C) and/or 5(D) of this Agreement prior to the issuance of injunctive relief, Employee shall pay Company a sum equal to fifty percent (50%) of the annual wages of the person(s) who were improperly solicited or hired away, based on such person's last rate of pay with Company.  This payment shall not preclude or act as a substitute for any remedy that would otherwise be available, including but not limited to, injunctive relief to prevent further violations.  The payment is a reasonable estimate of only a portion of the actual damages likely to be caused by a breach, most of which remains irreparable, and will not substitute for injunctive relief where such is available.

(C)     Company shall be entitled to recovery its attorneys' fees costs and expenses incurred in enforcing this Agreement in the event of a breach by Employee.  The Company shall be deemed the prevailing party if relief of any kind is granted to it without regard for whether some of the relief requested by the Company was denied or modified or whether the Agreement required reformation in order to be enforced.

**8.     Reformation, Severability and Survival**

To the extent any provision of this Agreement is found by a court or arbitrator to be invalid or unenforceable as written within a particular jurisdiction, such provision shall be construed by limiting and reducing it so as to contain the maximum restrictions enforceable within that jurisdiction.  The parties consent to this reformation process and specifically request it as a material part of this Agreement.  All remaining provisions of this Agreement, and/or portions thereof, shall remain in full force and effect and the enforceability of the Agreement outside the jurisdiction at issue shall not be affected.  The provisions of this Agreement shall be considered fully severable.  If despite the reformation provided for above, a provision of this Agreement is deemed illegal, void, or unenforceable; the offending provision shall be severed, disregarded and deemed excluded from this Agreement.  The severed provision shall not affect the remaining parts or provisions, paragraphs, and subparagraphs of this Agreement which shall be enforceable and which shall continue to be binding.  Employee's obligations under this Agreement shall

survive the termination of this agreement and Employee's employment with Company, and the existence of any claim or cause of action against Company by Employee, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by Company of such obligations.

**9.      Tolling of Covenants**

If it shall be determined by a court or arbitrator(s) that Employee has violated one of the post-employment restrictions provided for in this Agreement, then the period applicable to such post-employment restriction shall automatically be extended by a period of time equal in length to the period during which such violation(s) occurred up to a maximum extension of time equal to the period of restraint the Employee was originally obligated to comply with so that the Company is given the benefit of compliance (through injunctive relief or otherwise) that is the same as the length of time originally agreed upon for the restriction.  If Wisconsin law controls, this paragraph shall not apply.

**10.     No Conflicting Obligations**

Employee represents and warrants that Employee is not prevented or restricted from entering into this employment relationship with the Company, or restricted or limited in the scope of services that Employee can perform on behalf of the Company by any agreement, judgment, decree, order, or other restraint, except as has been expressly disclosed in writing to the Company.  **In performing services for the Company, Employee shall not disclose or use any trade secret, confidential, or proprietary information belonging to any third-party including previous employers and is hereby expressly admonished not to do so.**  Employee has not entered into, and will not enter into, any agreement either written or oral in conflict with this Agreement.

**11.     Waiver and Modification**

Any failure by Company to exercise its rights or remedies hereunder or any delay in asserting rights or remedies shall not be construed as a waiver of such rights or remedies, and no waiver of a right or remedy shall apply unless such waiver is expressly made in writing.  In the event of such a waiver from the Company, the Company's waiver must be in writing from an officer or duly authorized member of Company management expressly stating that it is intended to operate as a waiver or modification of this Agreement.  With the exception of the judicial or arbitral reformation provided for in Paragraph 6, this Agreement may only be modified through a writing executed by the parties.

**12.     Governing Law and Venue**

This Agreement shall be interpreted and construed in accordance with and governed by the laws of the state of the Employee's last assigned regular work location, without regard to any conflicts of laws, principles or rules to the contrary.  Any legal proceeding arising from or related to this Agreement shall be conducted in the state and county that is Employee's last assigned regular work location, and Employee waives and releases any and all objections to the contrary (based on personal jurisdiction, convenience of the forum, or otherwise).

**13.   Succession and Transferability**

(A)   Employee agrees that this Agreement shall automatically inure to the benefit of the Company's successors and assigns, and be enforceable by them, without the need for any further action by Employee.  The rights of the Company hereunder may be assigned, transferred, licensed, or sold, in whole or in part, subject to applicable law, without the need for any further consent from Employee, upon such terms as may be determined by the Company, including without limitation to any successor in interest to the Company, successor in interest to any of the assets or business of the Company, or any third party.  Employee hereby authorizes the Company to disclose the terms or provide a copy of this Agreement as well as any related information the Company deems advisable or relevant regarding Employee to any successor or assign.

(B)   This Agreement and the covenants herein shall inure to the benefit of, and be enforceable by the Company's parent (currently, Siemens Healthcare GmbH, and ultimately, Siemens AG), subsidiaries, successors and assigns, as express third-party beneficiaries, including without limitation any entity into which the Company or any part of the Company may be consolidated or merged.  As used herein, references to restrictions used to protect the property and interests of the Company will be understood to include protection of the property and interests of any subsidiary, affiliate, or parent of the Company with which Employee has any material involvement.

(C)   This Agreement shall be binding upon Employee's heirs, executors, administrators and assigns.  Employee's obligations under this Agreement are personal in nature. This Agreement may not be assigned or transferred by Employee, and Employee may not delegate, assign, or transfer, or attempt to delegate, assign or transfer, any obligation Employee may have pursuant to this Agreement, without the prior consent and agreement of the Company.

**14.   Changes in Applicable Law & Preservation of General Legal Duties**

The law relating to the matters which are the subject of this Agreement, including the restrictions and rights provided for in this Agreement and enforcement thereof, has been evolving and may continue to evolve.  To the extent amendment of this Agreement is advisable to meet the requirements of or any changes in applicable law, Employee will, upon the request of the Company, and without further compensation to Employee, amend this Agreement accordingly. Nothing in this Agreement will be construed to eliminate, reduce or diminish Employee's common law or statutory duties and obligations to the Company as an employee/agent that would be in effect absent this Agreement, including but not limited to Employee's duty of loyalty and fiduciary duty as an employee placed in a special position of trust; nor shall this Agreement limit or eliminate any remedies available to the Company for a violation of such duties.

**15.   Other Agreements**

This Agreement contains all of the terms and conditions of the matters agreed upon in it and replaces any prior oral agreements between the parties concerning the matters agreed upon within it.  Notwithstanding the foregoing, this Agreement shall be read to supplement and not supersede

or eliminate any existing written agreements between the parties that create rights in Confidential Information or Proprietary Works that benefit the Company.  Furthermore, this Agreement does not supersede, modify or replace the terms of any independent written employment agreements, equity award agreements, incentive compensation plans, Company guidelines or policies, or benefit plans that contain independent restrictive covenants applicable to Employee (this includes but is not limited to Murat Gungor 3/19/18).  If this Agreement is found void or unenforceable then any prior written agreement that would otherwise be deemed replaced by this Agreement shall immediately resume effect as if this Agreement had not existed.

**16.    Ongoing Nature of Agreement**

This Agreement will be deemed to continue during any periods of renewal of Employee's employment, including, but not limited to, periods of employment following promotions or transfers, or during any subsequent re-employment by Company or any of its affiliates.  A change or changes in Employee's duties, salary or compensation will not affect the validity or enforceability of this Agreement.

**17.    Notices**

Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be mailed by pre-paid certified mail, return receipt requested, or by Federal Express or other similar overnight delivery service providing proof of delivery, to the Company to the attention of the Head of Human Resources at the Company headquarters.  All notices shall be effective on the date sent in accordance with this provision.

**18.    At-Will Employment Status**

Nothing in this Agreement shall be construed to alter the terms and conditions under which Employee's employment may be terminated to create a guarantee of continued employment for a fixed period of time or to otherwise modify the at will nature of the employment relationship between the parties.  Except where Employee is subject to a separate written agreement that provides otherwise, Employee shall be an at will employee.

**19.    409A of the Internal Revenue Code**

In the event that any payment under this Agreement is found to be covered by Section 409A of the Internal Revenue Code of 1986, as amended ("**Code**"), or by any of the regulations or administrative guidance thereunder, then notwithstanding anything in the Agreement to the contrary, (i) if Employee is a "specified employee " within the meaning of Section 409A of the Code and the regulations and administrative guidance thereunder, no payment under this Agreement shall be made to Employee any earlier than the earlier of (A) six months following termination of Employee's employment from the Company or (B) the date of Employee's death; (ii) Employee will be deemed to have terminated employment from the Company for purpose of this Agreement only if Employee has a "separation from service" within the meaning of Section 409A of the Code and the regulations and administrative guidance thereunder; and (3) each payment under this Agreement is a separate "payment " within the meaning of Treasury

Regulation Section 1.409A-2(b)(2)(iii). Also, in the event that any payment under this Agreement is found to be covered by Section 409A of the Code or by any of the regulations or administrative guidance thereunder, then notwithstanding anything in the Agreement to the contrary, the Company may adopt amendments to this Agreement and appropriate policies and procedures, including amendments and policies with retroactive effect, that the Company reasonably determines are necessary or appropriate to comply with the requirements of Section 409A of the Code and the regulations and administrative guidance thereunder.

This Agreement shall be considered made on the date signed by Employee below which shall be the effective date of this Agreement unless Employee is entering into this Agreement as part of his/her original hiring, transfer or promotion into a new position in which case the terms of this Agreement are understood to be effective as of the first day of employment in the new position Employee is hired into or placed in (whether reduced to writing on that specific date or not).

| **EMPLOYEE**: | **SIEMENS MEDICAL SOLUTIONS USA, INC.** |
|---|---|
| *[signature]* | |
| Employee Signature | Signature |
| Anthony Medigo | |
| Printed Employee Name | Printed Name |
| Date: | |
| 11/13/18 | Title |
| | |
| | Signature |
| | |
| | Printed Name |
| | |
| | Title |