EXHIBIT B

## SEPARATION AGREEMENT AND GENERAL RELEASE ("AGREEMENT")

**CONSULT WITH A LAWYER BEFORE SIGNING THIS AGREEMENT. BY SIGNING THIS AGREEMENT YOU GIVE UP AND WAIVE IMPORTANT LEGAL RIGHTS.**

THIS AGREEMENT is made by and between Anthony Medigo ("Executive") and Siemens Medical Solutions USA, Inc. ("Siemens Healthineers").

Executive and Siemens Healthineers based upon good and valuable mutual consideration, including the execution by Executive of this AGREEMENT, hereby mutually consent to and agree to the following:

1. Executive has separated from his employment with Siemens Healthineers as of July 1, 2020 (the "Separation Date").

2. No later than 60 days after the Separation Date, Executive shall be paid a lump sum separation benefit of $405,000 (representing twelve (12) months base pay plus a lump sum bonus equal to Executive's target bonus under the applicable Short Term Incentive Plan with respect to fiscal year 2020) from Siemens Healthineers, less applicable federal, state and local withholding and FICA taxes.

   Executive acknowledges that, except as set forth herein, he is not entitled to any other separation benefit or other compensation from Siemens Healthineers or from any affiliate of Siemens Healthineers.

3. (a) At the same time that other bonuses are paid to other similarly situated employees under the applicable Short Term Incentive Plan with respect to fiscal year 2020, but in no event later than December 18, 2020, Executive shall be paid a bonus with respect to fiscal year 2020, in accordance with the terms and conditions of the Short Term Incentive Plan, that is equal to the bonus Executive would have received under such Plan if he had remained employed during the entire fiscal year 2020 with Siemens Healthineers, prorated based on the number of days during the fiscal year 2020 period that elapse through the Executive's Separation Date, subject to any elections Executive may have made under the Siemens Medical Solutions USA, Inc. Deferred Compensation Plan.

   (b) Except as provided in this Section 3 of this AGREEMENT, Executive acknowledges that he shall not be entitled to receive any other payments from any incentive plan of Siemens Healthineers or of any affiliate of Siemens Healthineers. Any payments made to Executive under any Short-Term Incentive Plan of Siemens Healthineers will be less any applicable federal, state and local withholding and FICA taxes.

4. If Executive elects COBRA coverage, for the 12 month period following the Separation Date, Siemens Healthineers will pay for the cost of health coverage for the Executive and his covered dependents under plans sponsored by Siemens Healthineers pursuant to the provisions of the federal Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). This period will count towards the 18-month period for which COBRA

Confidential

coverage under the health plans of Siemens Healthineers must be provided to the Executive and his covered dependents. Coordination of benefits rules will apply if the Executive or any of his covered dependents are eligible for Medicare or become eligible during the severance period.

5. Executive shall be provided with outplacement services for up to one year up to an amount not to exceed $6,000.

6. Executive shall be paid for any unused 2020 PTO days he has accrued through the Separation Date.

7. If Executive holds corporate office, directorship, manager position or official position of any kind with Siemens Healthineers or with any affiliate of Siemens Healthineers on the Separation Date, he hereby provides (pursuant to this Section 7 of this AGREEMENT) his written resignation from each such office, directorship or position effective on the Separation Date; provided, however, that Executive recognizes that each such position held by Executive will terminate upon Siemens' appointment of a successor to that position.

8. Executive, within 45 days of his termination of employment from Siemens Healthineers, will (i) submit a completed time and expense report for reimbursement of all outstanding business expenses which are reimbursable under the policies of Siemens Healthineers; (ii) pay all outstanding monies owed to Siemens Healthineers or a predecessor or an affiliate of Siemens Healthineers; and (iii) pay all outstanding charges on credit cards of Siemens Healthineers or of its predecessor for unauthorized personal expenses. By execution of this AGREEMENT, Executive authorizes Siemens Healthineers to withhold any and all payments which would otherwise be due under the provisions of this AGREEMENT unless and until all such requirements are met. In the event Executive does not satisfy these requirements within the 45 day period, by executing this AGREEMENT, Executive authorizes Siemens Healthineers to deduct all outstanding corporate credit card charges, any other monies owed to Siemens Healthineers or to a predecessor or affiliate of Siemens Healthineers, and/or the value of any unreturned property of Siemens Healthineers or of a predecessor or affiliate of Siemens Healthineers in the Executive's possession from any payments due under this AGREEMENT.

9. In accordance with the terms and conditions of the Siemens AG Stock Award Plan and the Siemens Healthineers Stock Programs, upon his Separation Date, upon his Separation Date, Executive shall forfeit any unvested Stock Awards.

   Executive will retain any shares purchased by him or to his account through the Siemens Group Share Matching Plan and the Siemens Healthineers Group Share Matching Plan (collectively the "SMP") and any vested matching shares he may have under the SMP. Executive will receive a pro-rata cash out of any of his unvested matching shares under the SMP in accordance with the terms and conditions of the SMP.

10. Executive agrees that, upon Siemens Healthineers' performance hereunder, and other than the payments and benefits provided under this AGREEMENT, neither Siemens Healthineers, nor any affiliate of Siemens Healthineers, shall have any obligation to

Executive for any other money or benefits, including, but not limited to, salary, benefits, bonus, short or long term incentive compensation, stock options, stock awards, matching shares, vacation, paid time off, relocation, severance, pension, medical, life or other insurance. Notwithstanding the immediately preceding sentence, nothing in this Agreement shall affect the rights of Executive to benefits he would otherwise have in the absence of this Agreement under the Siemens Medical Solutions USA, Inc. Pension Plan, the Siemens Medical Solutions USA, Inc. Savings Plan, and the Siemens Medical Solutions USA, Inc. Deferred Compensation Plan.

11. Executive acknowledges that he has no known workplace injury and has not sustained any known occupational disease or condition. Executive also acknowledges that Executive has not been retaliated against for reporting any allegations, if any, of wrongdoing by Siemens Healthineers or by its predecessors or affiliates or by any of their respective officers or directors, including, but not limited to, any allegations of corporate fraud.

12. Executive acknowledges and agrees that payments and benefits set forth in this AGREEMENT fully satisfy any claims for payments or benefits Executive may have, and any obligations Siemens Healthineers or its predecessors or any of its affiliates may have under any employment, severance or retention agreement or arrangement between the Executive and Siemens Healthineers, or any predecessor of Siemens Healthineers, or with any affiliate of Siemens Healthineers or with any predecessor of any affiliate of Siemens Healthineers. Executive agrees and acknowledges that he has not previously asserted a sex harassment or sexual abuse claim against Siemens Healthineers or any of the Released Parties (as defined below) and that Executive does not have a currently pending sex harassment or abuse claim against Siemens Healthineers or any of the Released Parties. Accordingly, Executive and Siemens Healthineers acknowledge that this release is not in settlement of a previously asserted or currently pending sex harassment claim.

13. No later than the Separation Date, Executive shall promptly return to Siemens Healthineers all property of Siemens Healthineers or of any predecessors or affiliates of Siemens Healthineers that Executive knows is in his possession or custody or under his control. Executive further agrees that he shall not copy or cause to be copied, print out or cause to be printed out any software, programs, documents or other materials or confidential or proprietary information originating with or belonging to Siemens Healthineers or to any predecessor or affiliate of Siemens Healthineers. For purposes of this Section, "property" includes, but is not limited to, any Siemens Healthineers credit cards, any Siemens Healthineers employee identification cards, all records, papers, notebooks, plans (including strategic plans), formulas, reports, devices, mechanisms, files, lists (including computer generated lists), drawings, documents, equipment, inventions, discoveries, products, software, programs, designs, methods, applications, integration plans or processes (including all copies thereof) relating to the business of Siemens Healthineers or of any predecessor or affiliate of Siemens Healthineers.

14. Executive acknowledges that he remains bound by any agreements he may have signed during his employment, including but not limited to any non-solicitation, confidentiality or

15. patent and secrecy agreements, including but not limited to the November 13, 2018 senior Manager Restrictive Covenants, Confidentiality and Intellectual Property Assignment Agreement.

16. This AGREEMENT sets forth the entire agreement between the parties and supersedes any and all prior agreements or understanding between the parties; however, nothing in this AGREEMENT shall be deemed to in any way modify, alter, amend, or reduce the obligations of Executive under any confidentiality, non-compete or non-solicitation, or intellectual property rights provision that is contained in any agreement he has signed with Siemens Healthineers or with any predecessor or affiliate of Siemens Healthineers or any policy of Siemens Healthineers or any of its affiliates that he was subject to as of the date immediately prior to the Separation Date.

17. Executive understands that Siemens Healthineers will not be required to provide any payments or benefits set forth in Sections 2 through 5 of this AGREEMENT, until this AGREEMENT becomes effective as set forth in Section 26 of this AGREEMENT. Executive agrees and understands the payments and benefits provided in Sections 2 through 5 of this AGREEMENT are good and valuable consideration, and that the receipt of such payments and benefits is expressly contingent upon Executive's continued compliance with the terms of this AGREEMENT.

18. In consideration for the promises and payments as set forth in this AGREEMENT, to which Executive is not otherwise entitled, Executive, on behalf of himself and his legal representatives, heirs and assigns, fully and forever releases and discharges, and promises not to sue, institute or maintain legal or administrative proceedings against Siemens Healthineers, or any of its directors, employees, former employees, officers, representatives, agents, shareholders, insurers, related entities, partners, affiliates, parents (direct or indirect), subsidiaries (direct or indirect), and divisions, and all of their respective predecessors, successors, assigns, and each of their respective directors, employees and former employees, officers, representatives, agents, attorneys and shareholders and their respective benefit plans, whether as individuals or in their official capacity; and their respective heirs and personal representatives (hereinafter collectively referred to as "<u>Released Parties</u>"), with respect to any and all claims, actions and charges of every kind, nature and description, whenever they arose or arise, whether known or unknown, which may by law be waived, including, but not limited to, any claim related to his hiring, employment, terms and conditions of employment, notice of separation or the separation thereof, as well as any application for reemployment with the Company that Executive has submitted, prior to the effective date of this AGREEMENT.

The waiver and release of claims contained herein includes any and all claims or causes of action under federal, state or local laws, and specifically includes, but is not limited to, Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000 et seq.), as amended; 42 USC § 1981 and § 1983; the Alaska Human Rights Act, the Alabama Age Discrimination in Employment Act, the Arkansas Civil Rights Act of 1993, the Unruh Civil Rights Act, the California Fair Employment and Housing Act, the California Family Rights Act, the Colorado Anti-Discrimination Act, the Connecticut Fair Employment Practices Act, the California Worker Adjustment and Retraining Notification Act, the Connecticut Code of Fair Practices, the Delaware Equal Accommodations Law, the Florida Civil Rights Act, the Georgia Fair Employment Practices Act, the Georgia Equal Employment for Persons with Disabilities Code, the Idaho Human Rights Commission Act, the Illinois Human Rights Act, the Illinois Whistleblower Act, the Indiana Civil Rights Laws, the Kansas Act

Against Discrimination, the Kansas Age Discrimination in Employment Act, the Louisiana Employment Discrimination Law, Chapter 151B of the Massachusetts General Laws, the Annotated Code of Maryland, the Elliot-Larsen Civil Rights Act, the Michigan Persons with Disabilities Civil Rights Act, the Michigan Whistleblower Protection Law, the Minnesota Human Rights Act, the Missouri Human Rights Act, the Nebraska Fair Employment Practice Act, Nebraska Revised Statute, Section 20-148, the New Jersey Law against Discrimination, the New Jersey Conscientious Employee Protection Act, the New York Human Rights Law, the New York Whistleblower Protection Law, the North Carolina Retaliatory Employment Discrimination Act, the Ohio Laws Against Discrimination, the Ohio Fair Employment Practices Act, the Ohio Whistleblower Protection Law, the Oklahoma Anti-Discrimination Act, the Oregon Fair Employment Practices Act, the Pennsylvania Human Relations Act, the South Dakota Human Relations Act, the Tennessee Human Rights Act, the Tennessee Handicap Act, the Texas Commission on Human Rights Act, the Utah Antidiscrimination Act of 1965, the Virginia Human Rights Act, the Washington State Civil Rights Act, the Wisconsin Fair Employment Law, the Wisconsin Fair Housing Law, the West Virginia Human Rights Act; the Equal Pay Act of 1963; the Americans with Disabilities Act, as amended (the "ADA"); the Sarbanes-Oxley Act of 2002; the Genetic Information Nondiscrimination Act; the Employee Retirement Income Security Act of 1974 ("ERISA"), except to the extent of currently vested benefits under any ERISA plan and benefits provided specifically herein; the Occupational Safety and Health Act ("OSHA"); the Immigration Reform and Control Act of 1986; the Worker Adjustment and Retraining Notification Act of 1989 ("WARN"); the Uniformed Services Employment and Reemployment Rights Act ("USERRA"); the Fair Labor Standards Act; the Family Medical Leave Act of 1993, as amended ("FMLA"); the Rehabilitation Act of 1973; any right or claim alleging violation of any other federal, state, county, city, or local law, statute, constitution, ordinance or regulation including, but not limited to those laws relating to discrimination on the basis of a protected criteria such as sex, race, color, national origin, ancestry, religion, sexual orientation, genetic information, physical or mental disability, medical condition, marital status, gender identity, pregnancy, gender expression, military or veteran status, claims relating to pension rights or payment of wages or compensation, including but not limited to, claims under any state or local wage payment laws, claims for front pay, back pay, overtime, premium pay, unpaid wages, minimum wages, paid time off, bonuses, commissions, unpaid expenses, vacation or paid time off, sick pay, liquidated damages, and punitive damages, restitution, reimbursement, interest, civil or statutory penalties, of any nature and description, and any other claims or damages arising under any other common law theory or any federal, state or local ordinance, or under any other theory of law or contract, including but not limited to breach of contract, fraud, invasion of privacy, whistleblower, retaliation, wrongful termination or intentional infliction of emotional or mental distress, libel or slander.

Executive represents and warrants that he currently has no pending or contemplated claim or charge against the Company or any of the Released Parties in any forum. Executive is free to file a charge with or participate in an investigation by a government administrative agency enforcing civil rights or other laws, such as the Equal Employment Opportunity Commission; however, Executive is herein waiving his rights to receive any individual relief, including monetary damages, resulting from such charge, investigation, or lawsuit. If at the time Executive is presented with this AGREEMENT he has already filed a

charge or claim against the Company or Released Parties, Executive must file an amendment to such claim or charge to delete any request for individual relief, including monetary damages, in order to be entitled to receive and/or retain the benefits of and under this AGREEMENT.

Without in any way limiting the generality of the foregoing, this AGREEMENT constitutes a full release and waiver of any and all civil monetary claims Executive had or has individually or on behalf of the United States under the False Claims Act, 31 U.S.C. §§ 3729-3733 or on behalf of any State under any State False Claims Act, including (i) any claim under 31 U.S.C. § 3730(h) or analogous State False Claims Act provision resulting from any alleged wrongful termination or retaliation and (b) any claim for attorneys' fees and costs under 31 U.S.C. § 3730(d) or analogous State False Claims Act provision. Executive represents and warrants that he has disclosed in writing to Siemens Healthineers all the alleged bases for any actual or potential claim under the False Claims Act, 31 U.S.C. §§ 3729-3733 or under any State False Claims Act. Executive agrees that the breach of the foregoing covenant shall result in Executive's forfeiture and return to Siemens Healthineers the full gross amount of all monetary consideration to Executive under this AGREEMENT.

If Executive breaches the "covenant not to sue" contained in this AGREEMENT, and the action is found to be barred in whole or in part by this AGREEMENT, then Executive agrees to pay the attorneys' fees and costs, or the proportions thereof, incurred by applicable Released Party in defending against those claims that are found to be barred by this AGREEMENT. Nothing in this Section shall preclude Executive from challenging the validity of the release in this AGREEMENT under the requirements of the Age Discrimination in Employment Act and Executive shall not be responsible for reimbursing the attorneys' fees and costs of the Released Parties in connection with such a challenge to the validity of the release. However, Executive acknowledges that the release in this AGREEMENT applies to every claim Executive has under the Age Discrimination in Employment Act, and that, unless the release is held to be invalid, all of Executive's claims under that Act shall be extinguished.

17. In exchange for the payments and benefits set forth in Sections 2 through 5 of the AGREEMENT, Executive also promises to make himself reasonably available to Siemens Healthineers and affiliates of Siemens Healthineers during times which are mutually convenient and which do not unreasonably interfere with other employment to assist Siemens Healthineers and affiliates of Siemens Healthineers regarding any current or future litigation, investigation, mediation and/or arbitration of matters or claims of which Executive may have factual knowledge. In this regard, Executive agrees to provide full information to Siemens Healthineers or an affiliate of Siemens Healthineers, assist in and provide information for responses to pleadings and discovery, and assist in, timely, cooperatively and thoroughly preparing for and providing testimony at any depositions, trials or at any other proceeding, whether requested by Siemens Healthineers, or an affiliate of Siemens Healthineers or subpoenaed by another party. Siemens Healthineers will reimburse Executive for any reasonable expenses and direct losses of income (other than any commission-based income) he actually incurs in connection with making himself available to assist Siemens Healthineers or an affiliate of Siemens Healthineers, such as reasonable travel, hotel and meal expenses.

18. Executive and Siemens Healthineers shall strictly maintain the confidentiality of the terms of this AGREEMENT and the negotiations leading to it, and Executive shall not disclose any information relating thereto to any individual other than his immediate family members, counsel and tax advisor (in each case only with their commitment that they will not disclose any information to anyone), except to the extent that such disclosure is in connection with a dispute between the parties hereto or such disclosure is required by law.

19. The payments and benefits as set forth in this AGREEMENT in exchange for a release shall not in any way be considered an admission of any liability on the part of any party to this AGREEMENT.

20. Executive shall not disparage any Released Party (as defined in Section 16).

21. Any and all disputes, complaints, controversies, claims and grievances (excluding those specifically excepted herein) arising under, out of, in connection with, or in any manner related to this AGREEMENT or the relation of the parties hereunder shall be submitted to final and binding arbitration to be conducted by the American Arbitration Association by a single arbitrator under its rules as applicable to the arbitration of employment disputes. Arbitration proceedings hereunder may be commenced by written notice from either party hereto to the other party. Such proceedings and evidence shall be confidential. The arbitrator shall have the power and the authority to make such decisions and awards as the arbitrator shall deem appropriate, including granting compensatory damages, and costs to the prevailing party (including fees of the arbitrator, but excluding attorneys' fees, punitive, exemplary, and consequential or special damages), and granting or issuance of such mandatory directions, prohibitions, orders, restraints and other injunctions (other than any of the foregoing that would reestablish the employment relationship formerly existing between Executive and Siemens) that the arbitrator may deem necessary or advisable directed to or against any of the parties, including a direction or order requiring specific performance of any covenant, agreement or provision of this AGREEMENT as a result of a breach thereof. The cost of such arbitration shall be borne equally by the parties except that each party shall bear its own cost of attorneys' fees and expenses. Any decision and award of the arbitrator shall be final, binding and conclusive upon all of the parties hereto and said decision and award may be entered as a final judgment in any court of competent jurisdiction. It is expressly agreed that arbitration as provided herein shall be the exclusive means for determination of all matters as above provided and neither of the parties hereto shall institute any action or proceeding in any court of law or equity, state or federal, other than respecting enforcement of the arbitrator's award hereunder. The foregoing sentence shall be a bona fide defense in any action or proceeding instituted contrary to this AGREEMENT. Notwithstanding the foregoing, nothing contained herein shall prevent or restrain in any manner Siemens Healthineers or any affiliate of Siemens Healthineers from instituting an action or claim in any court, or such other forum as may be appropriate to enforce the terms of any non-compete agreement, employee patent and secrecy agreement (or similar agreement relating to Siemens Healthineers' or a predecessor or an affiliate of Siemens Healthineers' confidential or proprietary business information or trade secrets) to protect Siemens Healthineers' or a predecessor or an affiliate of Siemens Healthineers' proprietary or confidential business information or trade secrets, to enforce or protect Siemens Healthineers' or a predecessor or an affiliate of Siemens Healthineers' patent, copyright,

trademark, trade name, trade dress rights, other intellectual property rights or to redress claims for product disparagement or trade libel. To the extent this paragraph sets forth different procedures, or remedies, or provides the arbitrator different powers than are set forth in the rules of the American Arbitration Association as applicable to the arbitration of employment disputes, the terms of this paragraph shall take precedence and control.

22. This AGREEMENT shall be deemed to have been made within the State of New York and shall be interpreted and construed and enforced in accordance with the laws of the State of New York and before the Courts of the State of New York, without regard to its conflict of laws provisions.

23. (a) The terms and provisions (collectively "provisions") of this AGREEMENT are severable.

(b) If one or more provisions of this AGREEMENT shall be ruled unenforceable or void, the provisions so affected shall be deemed amended and shall be construed so as to enable the provision(s) to be applied and enforced to the maximum lawful extent.

24. Executive understands that this AGREEMENT may not affect the rights and responsibilities of the Equal Employment Opportunity Commission ("Commission") to enforce the Age Discrimination in Employment Act ("ADEA") or be used to prevent an employee from filing a charge under the ADEA.

25. Executive acknowledges that he received this AGREEMENT on the 30th day of June 2020, has had an opportunity to consult an attorney before signing it, and was given a period of at least forty-five days to consider this AGREEMENT. The parties agree that any changes to this AGREEMENT, whether material or immaterial, do not restart the running of the 45-day period. Executive acknowledges that in signing this AGREEMENT, he has relied only on the promises written in this AGREEMENT and not on any other promise made by Siemens Healthineers or any affiliate of Siemens Healthineers. To the extent that Executive executes this AGREEMENT prior to the expiration of the 45-day period, Executive acknowledges that was his voluntary act.

26. Executive has seven (7) days to revoke this AGREEMENT after he signs it. This AGREEMENT will not become effective or enforceable until eight (8) days after Siemens Healthineers has received his signed copy of this AGREEMENT. Notice of revocation, as well as any other notices under this AGREEMENT, must be delivered in writing to Maria Nuphaus, Siemens Healthineers Human Resources, 685 East Middlefield Road, Mountain View, CA 94043. If Executive does not sign this Agreement with the 45 days or timely revokes it, he will not be entitled to the payments and benefits outlined in this Agreement.

27. This AGREEMENT may not be modified or changed orally.

SIEMENS MEDICAL SOLUTIONS USA, INC.

By: _____  7/2/20
    Anthony Medigo                Date

By: _____  7/7/2020
                                  Date

**Please write this sentence in the space provided if it is true:**

I have read this SEPARATION AGREEMENT AND GENERAL RELEASE and I understand all of its terms. I enter into and sign the AGREEMENT knowingly and voluntarily, with full knowledge of what it means.

*I have read this separation agreement and general release and I understand all of its terms I enter into and sign the agreement knowingly and voluntarily, with full knowledge of what it means.*

_____  7/2/20
Anthony Medigo             Date

*Kelly Johnson*             7/9/20
Kelly Johnson               date