UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NW YORK
------------------------------------------------------------------------x

SIEMENS MEDICAL SOLUTIONS USA, INC.,

                  Plaintiff,                                  Index No.  20-cv-9634-JPO

       v.

ANTHONY MEDIGO,

                  Defendant.

------------------------------------------------------------------------x

**DEFENDANT'S MEMORANDUM OF LAW IN OPPSOITION TO PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY**

**ETHAN A. BRECHER**
Law Office of Ethan A. Brecher, LLC
244 Fifth Avenue, Suite B241
New York, NY 10001
Phone: 866-971-0157
Cell: 347-504-2601
Email: ethan@ethanbrecherlaw.com

TABLE OF CONTENTS

I.   Facts ........................................................................................................... 1

II.   Standard for an Injunction ......................................................................... 5

   A.   Siemens Healthineers Cannot Show Irreparable Harm ........................ 6

   B.   Siemens Healthineers Cannot Show a Likelihood of Success on the Merits ................... 12

      1.   The Non-Compete Provision in the "Senior Manager Agreement" Doesn't Apply to

      Medigo Because His Last Assigned Regular Work Location Was in California ................ 12

      2.   Plaintiff's Claims Are Based on pure Speculation and Unlikely to Succeed................ 14

      3.   Plaintiff Waived and/or is Estopped from Asserting Any Claims Under the Senior

      Manager Agreement and the Separation Agreement ............................................ 17

III.   EXPEDITED DISCOVERY SHOULD BE DENIED AND/OR MEDIGO SHOULD ALSO

BE ALLOWED EXPEDITED ................................................................................. 19

IV.   CONCLUSION .......................................................................................... 20

.

Defendant Anthony Medigo ("Medigo") submits this brief in opposition to the application for a TRO and preliminary injunction sought by Siemens Medical Solutions USA, Inc. ("Siemens Healthineers") and in support of his request for relief from the Court's November 17, 2020 Order (DE # 9), to the extent of requesting that the Court dissolve and/or vacate the Order in full and otherwise that the Court deny Siemens Healthineers' application for a preliminary injunction and expedited discovery

## I.     Facts

Medigo hereby incorporates in full and by reference the facts set forth in his accompanying November 21, 2020 Declaration ("Medigo Decl.") and the accompanying November 21, 2020 Declaration of Todar Jeliaskov ("Jeliaskov Decl.").

Briefly, Medigo was employed by Siemens Healthineers from 2016 until his involuntary, without cause termination on July 1, 2020 on account of the fact that his services were no longer necessary because the company had recalled the sole product he was last responsible for commercializing starting in 2019 out of the company's California-based Ultrasound Division, a catheter device called the AcuNav Volume 4D ICE Catheter.  (Medigo Decl., ¶¶ 2, 3, 4, 5, 9, 10, 11).

Medigo had limited job responsibilities in connection with the company's 2D Catheter (Medigo Decl., ¶¶ 6-7), and surely had his role been important with respect to the 2D Catheter he would not have been terminated along with his team. In fact, he was terminated since there was nothing left for him to do in the Ultrasound Division. (Medigo Decl., ¶ 11). *See also* ¶ 15 of the James Gilmore Declaration (DE # 7), which states "In March 2020, Siemens Healthineers engaged in a temporary recall of the AcuNav Volume ICE Catheter from market to investigate a limited number of adverse events arising from the use of the device. The temporary recall places

a halt to Siemens Healthineers' sales and marketing efforts, resulting in the company's decision to reduce staff, including Medigo.")

On July 2, 2020 Medigo signed a Separation Agreement and Release Agreement (the "Separation Agreement") with Siemens Healthineers (*see* Declaration of Maria Nuphaus, (DE # 8, Ex. B).  The Separation Agreement contained clauses (¶¶ 14-15 thereof) in which he purported to reaffirm obligations under a November 13, 2018 Senior Manager Restrictive Covenants, Confidentiality and Intellectual Property Assignment Agreement (the "Senior Manager Agreement") *(see* Declaration of Maria Nuphaus, Ex. A). Siemens Healthineers refused to provide Medigo with a copy of the Senior Manager Agreement when he asked for it upon his termination and before he signed the Separation Agreement. (Medigo Decl., ¶ 12.) Thus, Medigo had no way to be certain what was contained in the Senior Manager Agreement, including what he was agreeing to when he signed the Separation Agreement, since to the best of his knowledge he did not have a copy of the Senior Management Agreement in his possession. (Medigo Decl., ¶ 12).

The Separation Agreement contains a New York choice of law provision (¶ 22) and an arbitration agreement (¶ 21), which arbitration provision Siemens Healthineers has decided to waive on account of the filing of its Complaint (DE # 1) against Medigo alleging breach of the Separation Agreement (among other things) in this case.

The Senior Manager Agreement contains in its ¶ 5(E) the Non-Competition Restriction that Plaintiff seeks to enforce in this case.  The Senior Manager Agreement also contains its own choice of law provision (¶12), which provides that the governing law and venue for any disputes thereunder shall be the law of "the state of the Employee's last assigned regular work location." ¶5(E) includes a crucial last sentence that Plaintiff glaringly, misleadingly, deceptively and

tellingly did not include in its papers. Specifically, the last sentence of ¶5(E) provides that, "If California law controls, the restriction provided for in this paragraph [5(E)] shall not apply."

Although Siemens Healthineers argues that New York law applies in this case because of the New York choice of law provision in the Separation Agreement and the fact that Medigo's personal residence is in New York City, in fact *California law* governs any claim relating to the Senior Manager Agreement.  This is because Medigo's "last assigned regular work location" was in Mountain View, California, from which he used a shared desk on a weekly basis while he worked in Siemens Healthineers' Ultrasound Division's Headquarters there. (See Medigo Decl. at ¶¶ 3-5.) As such, by its own terms, ¶5(E) of the Senior Manager Agreement is inapplicable to Medigo because California law governed his employment.  Notably, the Declarations that Plaintiff have submitted in connection with their application are absolutely silent regarding Medigo's "last assigned regular work location." There mere fact that that Medigo lives in New York City does not convert his apartment there into his last assigned regular work location.

The Separation Agreement's choice of law provision is inapplicable to the choice of law issues in this case regarding the Senior Management Agreement (and the issues involving the non-compete and inevitable disclosure of trade secrets/confidential information).  Plaintiff is seeking to enforce the Senior Manager Agreement's non-compete and confidentiality provisions in connection with its request for injunctive relief.  Those provisions are part of the Senior Manager Agreement and their purported validity is only reaffirmed in the Separation Agreement. The Separation Agreement does not replace the Senior Management Agreement or contain its own non-compete provisions, but only purports to reaffirm the validity of the Senior Manager Agreement.

Medigo joined Nuvera Medical, Inc ("NuVera") on September 7, 2020. (See Medigo Decl. at ¶ 13). Several weeks earlier, on August 19, 2020, Nikki Gainey ("Gainey"), whose Declaration Plaintiff relies on extensively in this case to argue that by joining NuVera Medigo is a competitive threat, spoke with NuVera's President and CEO Todar Jeliaskov ("Jeliaskov") and volunteered that NuVera should hire Medigo.  (See Jeliaskov Decl. at ¶ 6). Specifically, according to Jeliaskov,  "After we [i.e., he and Gainey] chatted about NuVera's product and NuVera's clinical cases in Europe the same week, Ms. Gainey mentioned to me, in substance, that she knew that I had met with Anthony Medigo several weeks earlier, that he is "great" and that I should consider hiring him.  I had not solicited any such recommendation from Ms. Gainey – she, of her own volition and without any prompting by me, raised the possibility of Mr. Medigo working for NuVera and encouraged it.  In fact, the decision to hire Mr. Medigo was largely supported by Ms. Gainey's positive feedback about Mr. Medigo." (See Jeliaskov Decl. at ¶ 6).

The stunning fact that Gainey, who had a "friendly relationship" with Jeliaskov (see Jeliaskov Decl. at ¶ 7),  encouraged NuVera to hire Medigo supports Medigo's arguments that (a) he was not any sort of competitive threat to Plaintiff, presumably because the device he was terminated because the device he worked on at Siemens Healthineers had been recalled and he had nothing further useful to contribute to the company, (b) did not possess any trade secrets or confidential information that Plaintiff thought necessary to protect if he joined NuVera, who Plaintiff now claims is a direct competitor, and (c) Plaintiff waived any rights regarding Medigo joining NuVera and/or should be equitably estopped from seeking to enforce the Senior Manager Agreement and the Separation Agreement as against Medigo.   Gainey's actions in promoting

Medigo to NuVera also shred the credibility of her allegations that Medigo is a threat to misuse its trade secrets/confidential information.

Medigo was advised first verbally on November 17, 2020 (Medigo Decl. at ¶ 21) and by letter on November 18, 2020 by Jeliaskov that he was being terminated (and relieved from his job responsibilities immediately) from NuVera on account of a corporate reorganization. (See Jeliaskov Decl. at ¶¶ 13-14.)

Contrary to Plaintiff's unfounded speculation, fears, beliefs and concerns, Medigo has not disclosed any of Plaintiff's trade secrets and/or confidential information to NuVera. (See Medigo Decl. at ¶ 27 and Jeliaskov Decl. at ¶ 9.)

Although Plaintiff contends that Medigo contacted while at NuVera one of its proprietary "key opinion leaders" (KOL), Dr. Manni Vannan (it identities no other KOL by name in its papers), Dr. Vannan is a publicly known figure in the medical/catheter device field, was known to Medigo prior to his joining Siemens Healthineers, and indeed Siemens Healthineers itself identifies Dr. Vannan on its own website in two separate postings, thus destroying any claim of secrecy regarding Dr. Vannan's identity. (Medigo Decl. at ¶ 25-26.). Moreover, Medigo did nothing to interfere with any relationship existing or prospective between Siemens Healthineers and a third-party, Medigo Decl., ¶ 29, and all Plaintiff offers in this regard is sheer speculation and guesswork without any factual foundation whatsoever.

## II.     Standard for an Injunction

In the Second Circuit, a "party seeking a preliminary injunction [must] show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Citigroup Glob. Markets,*

*Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (citation omitted). In order to satisfy the likelihood of success on the merits standard, a plaintiff must show that [her] ultimate success on the merits is more likely than not." Integro USA, Inc. v. Crain, 2019 IER Cases 439188, 2019 WL 6030100 (S.D.N.Y., Nov. 14, 2019) (internal quotation marks omitted).

Siemens Healthineers is not entitled to a preliminary injunction because it cannot meet the requirements for one as matter of law.  Alternatively, there are numerous factual issues that require a hearing and resolution in order for the Court to determine whether an injunction is at all proper, and it should hold an evidentiary hearing to resolve those issues, which include a final resolution of whether California law applies to the Senior Manager Agreement, whether Plaintiff waived its rights under the Senior Management Agreement on account of Gainey's actions and conduct in encouraging NuVera to hire Medigo, and whether NuVera and Plaintiff are truly competitors at least as far as Medigo's employment is concerned because of the fact that he was terminated because the product he was responsible for commercializing  was recalled and there was nothing left for him or his team to do at Siemens Healthineers.

## A.  Siemens Healthineers Cannot Show Irreparable Harm

"The showing of irreparable harm is [p]erhaps the single most important prerequisite for the issuance of a preliminary injunction…, and the moving party must show that injury is likely before the other requirements for an injunction will be considered. ... To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation… And, irreparable harm must be shown to be actual and

imminent, not remote or speculative." <u>Kamerling v. Massanari</u>, 295 F.3d 206, 214 (2d Cir. 2002).

Siemens Healthineers can show no irreparable harm in this case, because effective no later than November 18, 2020 Medigo was relieved from performing all responsibilities as an employee of NuVera and his employment will be formally severed in the near future on account of a corporate reorganization.  The core of the assertions that Gainey in her Declaration and James Gilmore ("Gilmore") in his Declaration make against Medigo is that Plaintiff will suffer irreparable harm if Medigo's employment at NuVera continues.  However, that assertion has been mooted by the imminent termination of Medigo's relationship with NuVera (for reasons unrelated to this case) and his being relieved on November 18, 2020 of all work obligations for NuVera.  As such, there can be no on-going or continuing harm which cannot be addressed on a final decision on the merits.

Moreover, since Medigo is no longer actively providing any services to NuVera, any alleged harm is totally remote and speculative further undercutting the claim of irreparable harm.

Moreover, Plaintiff has only made bare, conclusory and speculative allegations regarding any threat of transfer of its trade secrets or confidential information to NuVera (or anyone else for that matter). It has provided not a shred of proof that Medigo shared any such information with NuVera.  Indeed, Gainey's Declaration claims that harm will accrue to plaintiff "if" Medigo does something (see Gainey Decl. at ¶¶ 21-22), but she asserts no actual facts that Medigo has in fact misappropriated or misused any trade secrets or confidential information, and is based on uncorroborated "beliefs" and "fears" that Medigo will disclose Plaintiff's information to NuVera. (See Gainey Decl. at ¶¶ 16-17).  Gainey also speculates that Medigo spoke with Dr. Vannan

(Gainey Decl. at ¶ 18) and guesses about how Medigo knew about Dr. Vannan. (See Gainey Decl. at ¶ 18) in spite of the fact that Plaintiff identifies Dr. Vannan on its own website.

Similarly, Gilmore's Declaration is rife with speculation.  Apparently, he did not know that Gainey had spoken with NuVera about Medigo becoming employed there.  (see e.g., Gilmore Decl. at ¶ 23).  Gilmore, like Gainey, bases his assertions based on "beliefs" about might what happen if Medigo works at NuVera (Gilmore Decl. at ¶¶ 24 & 26) as opposed to any factual assertions.

Furthermore, both Gainey and Gilmore's Declarations expressly rely on the one-year Non-Competition Restriction in ¶ 5(E) of the Senior Manager Agreement (see Gainey Decl. at ¶ 25 and Gilmore Decl. at ¶¶ 28 & 30), which is inapplicable to Medigo because his last assigned regular work location was in California. (Medigo Decl. at ¶¶ 3-4).  Accordingly, Plaintiff cannot suffer irreparable harm because Medigo cannot violate a provision that doesn't apply to him.

Plaintiff also argues that it will suffer irreparable harm if an injunction is not granted because Medigo will inevitably disclose as part of his job responsibilities (which have now ceased) its trade secrets and confidential information to NuVera.  However, the "inevitable disclosure" doctrine does not apply under California law, *see* Beaulieu Group, LLC v. Bates, EDCV151090JGBKKX, 2016 WL 7626471, at *12 (C.D. Cal., Oct. 18, 2016)(internal quotation marks omitted) ("California does not recognize the inevitable disclosure doctrine, which means that a party cannot prove trade secret misappropriation by demonstrating that a former employee's new employment will inevitably lead the former employee to rely on the former

employer's trade secrets,"),[1] and because the Senior Manager Agreement is governed by California law,  Plaintiff may noy rely on an inapplicable doctrine in seeking injunctive relief.

Even if New York law applied, which it doesn't, the inevitable disclosure doctrine is inapplicable.   "To determine whether an employee working in a new position will inevitably disclose his former employer's trade secrets, New York courts consider: (1) the extent to which the new employer is a direct competitor of the former employer; (2) whether the employee's new position is nearly identical to his old one, such that he could not reasonably be expected to fulfill his new job responsibilities without utilizing the trade secrets of his former employer; (3) the extent to which the trade secrets at issue would be valuable to the new employer; and (4) the nature of the industry and its trade secrets."  Flatiron Health, Inc. v. Carson, 2020 IER Cases 103629, 2020 WL 1320867 (S.D.N.Y., Mar. 20, 2020).


Here, Medigo is no longer actively employed by NuVera, and thus the inevitable disclosure that Plaintiff is concerned about cannot occur.  Also, since Plaintiff stopped selling the kind of device that is competitive with the device Medigo was supposed to work on at NuVera, and in fact terminated his employment because the device was no longer available for commercializing, his position is not comparable. Further, since Gainey recommend that NuVera hire Medigo, NuVera can hardly been seen as a competitor or one where his new job

---

[1] See also SPS Tech., LLC v. Briles Aerospace, Inc., CV 18-9536-MWF (ASX), 2019 WL 1974902, at *13 (C.D. Cal., Mar. 11, 2019)("To the extent PB Fasteners believes that its formers employees had detailed knowledge of trade secrets necessarily implies some disclosure (i.e., inevitable disclosure), such an inference is inconsistent with the law. See, e.g., Lam Res.  Corp. v. Deshmukh, 157 Fed. App'x 26, 28 (9th Cir. 2005) ("[B]ecause California does not recognize the inevitable disclosure doctrine, the preliminary injunction, which is premised on a valid inevitable disclosure cause of action, must be vacated."); Whyte v. Schlage Lock Co., 101 Cal. App. 4th 1443, 1463, 125 Cal. Rptr. 2d 277 (2002) ("Lest there be any doubt about our holding, our rejection of the inevitable disclosure doctrine is complete.")).

responsibilities would require him to disclose Plaintiff's trade secrets and/or confidential information.

Furthermore, although Gainey claims that Plaintiff will suffer irreparable harm absent an injunction, Plaintiff's position is totally undercut by the fact that Gainey herself suggested to NuVera that it hire Medigo, thereby destroying the credibility of her assertions that Medigo is a competitive threat to Plaintiff or that Plaintiff would suffer irreparable harm should he become employed there. It's especially notable that Gainey, who in her Declaration emphasizes her deep involvement with the 2D Catheter and the AcuNav Volume 4D ICE Catheter, saw fit to encourage NuVera to hire Medigo. This fact alone obliterates her newly minted-for-litigation position that Plaintiff will suffer irreparable harm in connection with Medigo's employment at NuVera. Similarly, if Medigo was so intimately involved with the 2d Catheter business Plaintiff surely would not have terminated his employment. In fact, the most logical conclusion that can be drawn is that, as Medigo states in his Declaration at ¶¶ 6-7, he had tangential involvement in the Plaintiff's 2D Catheter business.

Additionally, Plaintiff's significant delay in seeking injunctive relief also strongly weighs against the issuance of injunctive relief. *See* Usherson v. Bandshell Artist Mgt., 19-CV-6368 (JMF), 2020 WL 4228754, at *3 (S.D.N.Y., July 22, 2020) ("a court "must consider a plaintiff's delay in seeking relief when analyzing whether the plaintiff will suffer irreparable harm in the absence of relief.").

Here, Gainey claims she first became aware of Medigo's employment at NuVera on September 18, 2020. Gainey Decl. ¶ 14. If Medigo was such a competitive threat, however, Plaintiff would have been expected to seek immediate injunctive relief. Instead, Plaintiff

10

delayed until November 17, 2020 (60 days from September 18) to commence this action. Plaintiff provides no explanation for this two-month delay in seeking injunctive relief, and the unexplained delay weighs strongly against the issuance of injunctive relief.

Further, in early October 2020 Plaintiff, through counsel, sent Medigo a threatening letter about his employment at NuVera, to which Jeliaskov responded on October 12, 2020. (See Jeliaskov Decl. at ¶ 9) Still, Gainey did nothing to contact Jeliaskov thereafter (Jeliaskov Decl. at ¶¶10-11) and Plaintiff waited until November 17, 2020 to commence this action without any explanation for its 36-day delay after October 12 before seeking injunctive relief.  In fact, Plaintiff sat on its hands for weeks and weeks before seeking an injunction, casting strong doubt on its belated argument a week before Thanksgiving in the midst of an unprecedented pandemic that it will suffer irreparable harm absent an injunction.

Instead, Plaintiff's belated request for an injunction coming so late in the day against an individual who is no longer employed by an alleged competitor (and whose employment there was encouraged by one of two primary affiants against him) suggests an effort to strong-arm and crush an individual with far less resources in order to prove a point to existing employees regarding how the company views its non-compete agreements. Indeed, Siemens Healthineers was aware by 9:40am on November 18, 2020 that Medigo's employment with NuVera was effectively done and that he was no longer actively providing services to NuVera as of that time, but troublingly Siemens Healthineers has done nothing to advise the Court of this major change of circumstances which affects the core underpinnings of its case and the basis upon which the Court's TRO was granted. (Medigo Decl., ¶ 22).

The Court should factor in strongly Plaintiff's delay in seeking injunctive relief in determining the non-existence of irreparable harm.

11

Plaintiff's reliance on any agreement in the Senior Manager Agreement that irreparable harm would come from a violation of that agreement is unavailing, since that agreement contains mere boilerplate and, in any event, ¶ 5(E) of the Senior Manager Agreement is not even applicable to Medigo.  W. Publ. Corp. v. Coiteux, 16-CV-6825 (JSR), 2017 WL 4339486, at *4 (S.D.N.Y. Aug. 28, 2017) ("the provision alone does not justify such a finding, especially when it comes in a boilerplate agreement").

**B. <u>Siemens Healthineers Cannot Show a Likelihood of Success on the Merits</u>**

Siemens Healthineers is not likely to succeed on the merits of its claims against Medigo and thus injunctive relief should be denied on this basis.

**1. The Non-Compete Provision in the "Senior Manager Agreement" Doesn't Apply to Medigo Because His Last Assigned Regular Work Location Was in California**

The Senior Manager Agreement contains the Non-Competition Restriction in ¶ 5(E) that Siemens Healthineers relies on heavily in seeking its injunction.  Notably, Siemens Healthineers misleadingly omitted from its papers the last sentence of ¶ 5(E) of the Senior Manager Agreement, which states that, "If California law controls, the restriction provided for in this paragraph shall not apply."  Paragraph 12 of the Senior Manager Agreement is the Governing Law and Venue clause for the Senior Management Agreement and states:

> This Agreement shall be interpreted and construed ***<u>in accordance with and governed by the laws of the state of the Employee's last assigned regular work location</u>***, without regard to any conflicts of laws, principles or rules to the contrary. ***<u>Any legal proceeding arising from or related to this Agreement shall be conducted in the state and county that is Employee's last assigned regular work location</u>***, and Employee waives and releases any and all objections to the contrary (based on personal jurisdiction, convenience of the forum, or otherwise).

(emphasis added)

As set forth in Medigo's Decl. at ¶¶ 3-5, his last assigned regular work location at Siemens Healthineers was based in its Ultrasound Division, headquartered in Mountain View, California.  Thus, according to the express terms of the Senior Manager Agreement, the entire agreement, including its Non-Competition Restriction that Plaintiff seeks to enforce, doesn't apply to Medigo, because the Senior Manager Agreement as applied to Medigo is governed by California law.

While Plaintiff argues in its brief without factual support that Medigo's home residence was his last assigned regular work location, it provides no proof of this and all three declarations that it filed are totally silent on his last assigned work location. Indeed, where Medigo resides has nothing to do with his last assigned regular work location.   Thus, Plaintiff is not likely to succeed on its claim that Medigo violated the Senior Manager Agreement's Non-Competition Restriction because as a matter of contract interpretation it does not apply to him.

Although the Separation Agreement contains a New York choice of law provision, it does not contain a separate non-compete provision. Rather, in ¶¶14-15 of the Separation Agreement there is a reference to the fact that Medigo continues to be bound by the Senior Manager Agreement, which as noted above, has its own choice of law and venue provision, which in Medigo's case means that because his last assigned work location as California, California law applies. Thus, the Non-Competition Restriction in ¶ 5(E) of the Senior Management Agreement is by its own terms inapplicable to Medigo.

Even if New York law somehow applied to the Non-Competition Restriction, it would not have barred Medigo from joining NuVera because Siemens Healthineers, by terminating Medigo due to the recall of the AcuNav Volume 4D ICE Catheter, shows that it did not have a

13

"continuing willingness" to employ him. *See* Kolchins v. Evolution Markets, Inc., 182 A.D.3d 408 (1st Dep't 2020) ("The court correctly dismissed the SAC's claims alleging breach of the restrictive covenants. The record demonstrates as a matter of law that these covenants are not enforceable because Evolution did not have a "continued willingness" to employ Kolchins, despite Kolchins's continued desire to work for the company.").

Furthermore, to the extent that Plaintiff relies on the inevitable disclosure doctrine in seeking injunctive relief, not only is that doctrine inapplicable under California law, but it would not apply (as explained above) were New York law to apply. Thus, Plaintiff is not likely to succeed on its inevitable disclosure claim either.

## 2. Plaintiff's Claims Are Based on pure Speculation and Unlikely to Succeed

Plaintiff also relies on the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq. ("DTSA") to assert claims against Medigo. "To state a claim for misappropriation under the DTSA, a plaintiff must allege that it possessed a trade secret that the defendant misappropriated." Ad Lightning Inc. v Clean.io, Inc., 19-CV-7367 (JPO), 2020 WL 4570047, at *2 (S.D.N.Y., Aug. 7, 2020). However, "a party alleging that it owns a trade secret must put forth specific allegations as to the information owned," such that the opposing party is given fair notice of the claim." Id. Here, Plaintiff only provides nebulous and generalized descriptions of its alleged trade secrets and confidential information such that Medigo does not have fair notice of what Plaintiff claims is a trade secret or confidential. Pricing data, market strategies and knowledge of the intricacies of a business do not constitute trade secrets. W. Publ. Corp. v. Coiteux, 16-CV-6825 (JSR), 2017 WL 4339486, at *4 (S.D.N.Y. Aug. 28, 2017)

However, the DTSA also requires that a defendant misappropriate a trade secret.  Under the DTSA misappropriation is the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means[,or] disclosure or use of a trade secret of another without express or implied consent by a person who ... used improper means to acquire knowledge of the trade secret." 18 U.S.C. § 1839(5). "The DTSA, therefore, contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use."  Ad Lightning Inc.  2020 WL 4570047, at *3.

Here, there is no assertion in any of the Declarations that Plaintiff has submitted that that Medigo has misappropriated, misused or disclosed any of its trade secrets or confidential information to NuVera or anyone at all.  The Plaintiff's Declarations are simply replete with uncorroborated speculation about what might happen if Medigo discloses to NuVera its information.  Both Medigo and Jeliaskov have denied that Medigo shared any such information with NuVera.  In short, Plaintiff has failed to assert anything remotely close to anything alleging that Medigo misappropriated or disclosed its trade secrets, and it is thus likely to fail on the merits of this claim.

Likewise, Plaintiff fails in the Complaint, or the Gilmore and Gainey Declarations to assert any **_facts_** whatsoever that Medigo interfered with any existing or prospective relationships with third-parties. Its claims related to interference are based exclusively on sheer speculation and conclusory allegations, supported by no factual assertions, nor does Plaintiff assert the actual breach of any agreements with any third-parties.

Likewise, it asserts in its Complaint a "knowledge transfer" or misappropriation scheme between Medigo and NuVera for which it provides no proof whatsoever and which in any event

is refuted by both Jeliaskov and Medigo in their Declarations.  Similarly, its assertions that Medigo's alleged contact with Dr. Vannan, who is supposedly a proprietary KOL of the company, is undercut by the fact that Medigo knew of him prior to joining Plaintiff, the fact that Dr. Vannan is easily found on the internet and well-known through his participation in industry conferences, that Dr. Vannan was known to NuVera prior to Medigo's employment there, and the salient facts that Plaintiff itself discloses in connection to Dr. Vannan on its own publicly available website.  Plaintiff has also failed to allege any facts supporting its claim that Medigo diverted business away.

Indeed, virtually all of Plaintiff's Complaint is based on speculation, hyperbole, uncorroborated fears, concerns and beliefs for which it provides no factual support.  This is truly outrageous, considering the fact that it had ample time to marshal facts for months before the filing of the Complaint and the Gilmore and Gainey Declarations.  The Complaint and Gilmore and Gainey Declarations are is grossly because they are only supported by the kinds of conclusory assertions that would warrant immediate dismissal of the Complaint on a motion to dismiss.  *See* Ad Lightning Inc. v. Clean.io, Inc., 19-CV-7367 (JPO), 2020 WL 4570047, at *1-2 (S.D.N.Y., Aug. 7, 2020)("A plaintiff facing a motion to dismiss under Rule 12(b)(6) must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint need not contain "detailed factual allegations," but it must offer something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "[N]aked assertion[s]" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557). Nor will "a formulaic recitation of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555).  Instead, a plaintiff must "plead factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This requires more than the "sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Put simply, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).").

In short, there are no allegations of any actual theft, misappropriation, or misuse of any trade secrets or confidential information in any of the filings Siemens Healthineers made in this case.   The case is founded primarily on an alleged breach of an inapplicable non-compete provision and alleged inevitable disclosure of trade secrets and confidential information (which doctrine does not apply under the controlling California law).   Moreover, there are no factual allegations of any actual interference by Medigo with any actual or prospective contracts, but rather allegations based only of fears and concerns that this may happen.   In fact, the entire case is premised on a house of cards of speculation and surmise.   The Complaint's allegations fail to withstand scrutiny and are not likely to prevail.

### 3.  Plaintiff Waived and/or is Estopped from Asserting Any Claims Under the Senior Manager Agreement and the Separation Agreement

Siemens Healthineers waived and/or should be estopped from enforcing any rights under the Senior Manager Agreement and the Separation Agreement for any alleged breaches thereof because in August 2020, after his termination from Siemens Healthineers, Gainey voluntarily encouraged NuVera to hire Medigo. *See* Wind Dancer Prod. Group v. Walt Disney Pictures, 10

Cal. App. 5th 56, 78, 215 Cal. Rptr. 3d 835, 853 (Cal. Ct. App. 2017];[2] Fundamental Portfolio

Advisors, Inc. v. Tocqueville Asset Mgt., L.P., 7 NY3d 96, 104 (2006)("Contractual rights may

be waived if they are knowingly, voluntarily and intentionally abandoned").  Plaintiff cannot

now be heard to complain about Medigo joining NuVera, or not informing it in advance of his

intention to join NuVera, when one of its senior officers and executives (indeed one if the two

officers upon who Plaintiff relies to make out its claims against Medigo), encouraged NuVera to

hire him in an unsolicited conversation with NuVera's CEO.

It's also noteworthy that Plaintiff filed the Complaint (DE # 1) and the Gainey (DE # 6),

Gilmore (DE # 7) and Nuphaus (DE # 8) Declarations on the Court's docket on November 17,

2020 without redactions, and only subsequently, on November 19, 2020 (DE # 12) sought to file

them in redacted form without explaining why the initial unredacted versions were filed.

-------------------

[2] "[N]otwithstanding a provision in a written agreement that precludes oral modification, the parties may, by their words or conduct, waive contractual rights. (*Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1339, 7 Cal.Rptr.3d 178 ["[l]ike any other contractual terms, timeliness provisions are subject to waiver by the party for whose benefit they are made"]; *Biren v. Equality Emergency Medical Group, Inc.* (2002) 102 Cal.App.4th 125, 141, 125 Cal.Rptr.2d 325 [" 'parties may, by their conduct, waive [a no oral modification] provision' where evidence shows that was their intent"].) " '[T]he pivotal issue in a claim of waiver is the intention of the party who allegedly relinquished the known legal right.' [Citation.]" (*Old Republic Ins. Co. v. FSR Brokerage, Inc.* (2000) 80 Cal.App.4th 666, 678, 95 Cal.Rptr.2d 583.) " 'The waiver may be either express, based on the words of the waiving party, or implied, based on conduct indicating an intent to relinquish the right. [Citation.]' [Citation.] Thus, ' "California courts will find waiver when a party intentionally relinquishes a right or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." [Citation.]' [Citation.]" (*Ibid.*) Waiver is ordinarily a question of fact unless "there are no disputed facts and only one reasonable inference may be drawn." (*DuBeck v. California Physicians' Service* (2015) 234 Cal.App.4th 1254, 1265, 184 Cal.Rptr.3d 743.). In addition to waiving contractual rights, the parties may, by their words or conduct, be estopped from enforcing a written contract provision.".

Plaintiff had plenty of time before filing this case to make efforts to file these documents under seal.  It has thus waived any right to now "put the toothpaste back in the tube" and file under seal what it has filed publicly. This action has already received public attention in the press, see "*Siemens accuses former manager of stealing heart catheter trade secrets*", Reuters November 17**,** 2020.[3] Thus, Siemens Healthineers has waived any confidentiality of any information set forth in its public court filing, which have now been accessed by the press.

In short, Plaintiff is not likely to prevail on the merits of any of its claims and thus the injunctive relief it seeks should be denied on this separate ground.

### III.   EXPEDITED DISCOVERY SHOULD BE DENIED AND/OR MEDIGO SHOULD ALSO BE ALLOWED EXPEDITED

In light of the lack of irreparable harm and the great weakness of Plaintiff's claims, there is no need or good cause for expedited discovery here.  Stern v. Cosby, 246 F.R.D. 453, 457 (S.D.N.Y. 2007) (discussing standards applied in the SDNY for expedited discovery). If the Court nonetheless determines expedited discovery is appropriate, Medigo should also be allowed to conduct expedited discovery to depose Gainey regarding among other things her interactions with Jeliaskov regarding Medigo's employment at NuVera and the basis for any of her allegations against him and a FRCP 30(b)(6) deposition of Siemens Healthineers to explore the factual basis for its allegations against him and the facts and circumstances of his last assigned regular work location and the production of documents reflecting that location.  This latter issue

---

[3]https://today.westlaw.com/Document/I1d708450291411eb99fb9fd8011b8598/View/FullText.html?transitionType=SearchItem&contextData=(sc.Default)

is critical as it addresses whether the Non-Competition Restriction in the Senior Manager

Agreement applies to Medigo or whether the "inevitable disclosure" doctrine applies.

## IV.    CONCLUSION

For the reasons set forth above and in the Medigo and Jeliaskov Declarations, Plaintiff

has failed to establish its entitlement to a preliminary injunction, and the Court should vacate

and/or dissolve its November 17, 2020 Order (DE # 9) and otherwise deny Plaintiff's motion for

a preliminary injunction and expedited discovery.


Dated:  New York, New York
        November 21, 2020


                            Respectfully submitted,


                            /s/ Ethan A. Brecher
                            **ETHAN A. BRECHER**
                            Law Office of Ethan A. Brecher, LLC
                            244 Fifth Avenue, Suite B241
                            New York, NY 10001
                            Phone: 866-971-0157
                            Cell: 347-504-2601
                            Email: ethan@ethanbrecherlaw.com