UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NW YORK
------------------------------------------------------------------x

SIEMENS MEDICAL SOLUTIONS USA, INC.,

                Plaintiff,

     v.

ANTHONY MEDIGO,

             Defendant.

------------------------------------------------------------------x

Index No.  20-cv-9634-JPO

**DECLARATION OF
ANTHONY MEDIGO**

ANTHONY MEDIGO, of full age, hereby declares pursuant to 28 U.S.C. § 1746:

1. I am individual and reside in New York City. I submit this Declaration on personal knowledge in opposition to the application for injunctive relief sought by my prior employer, Siemens Medical Solutions USA, Inc. ("Siemens Healthineers").

2. Prior to joining Siemens Healthineers in November 2016, I had worked in medical sales since 2003, first at Boston Scientific from 2003-2007, then at Access Closure, 2007-2011 and then at Cardiovascular Systems, Inc. from 2011-2016.  I was employed by Siemens Healthineers from November 2016 until I was terminated without cause in the summer of 2020 during the peak of the Covid pandemic.

3. My last assigned regular work location at Siemens Healthineers was in its Ultrasound Division's headquarters located at 685 East Middlefield Road, Mountain View, CA 94043, where I at all times maintained a shared desk. Although my personal residence is in New York City, Siemens Healthineers' Ultrasound Division does not maintain any

1

New York-based office. Prior to my assignment to the Ultrasound Division in California, I was assigned to Siemens Healthineers' U.S. headquarters in Malvern, Pennsylvania, where I was housed in its Advanced Therapies Division. New York City was never deemed my work location.

4.  I would generally work on average one week per month from my Mountain View shared desk (Siemens Healthineers would pay for me to stay at hotels near the office), and I would generally travel for work throughout the United States or globally during the rest of the month.  It is my understanding that in Siemens Healthineers' human resources system it is recorded that my assigned work location was in Mountain View, California. This was also the address listed on my professional business cards that Siemens Healthineers provided me for use in connection with my job.   I do not believe that my New York apartment was ever deemed or considered my assigned regular work location.

5.  In my most recent position at Siemens Healthineers I was specifically tasked in 2019 with leading the commercial launch of the company's AcuNav Volume 4D ICE Catheter.  I was recruited by Tracy Bury, SVP of Marketing Sales, Communication at Siemens Healthineers, who would become my superior, to join the company's Global Ultrasound Division, based out of the Mountain View, CA location, solely to commercialize the AcuNav 4D ICE Catheter. My shared desk in Mountain View, California was located in the office adjacent to Ms. Bury's office.

6.  Even though the company's Acuson 2D Intra-Cardiac Echo Catheter (the "2D Catheter") business was in existence since 2002, my position in connection with the AcuNav Volume 4D ICE Catheter was newly created for the sole purpose of commercializing this

product.    I did not have any job responsibilities that directly allowed me to make decisions or directly impact the 2D Catheter business referenced in Plaintiff's papers. Saying I was responsible for the 2D business is grossly misleading.    The only responsibilities I had with the 2D Catheter busines were to maintain an open line of communication with Biosense Webster, Inc. ("BWI") and facilitate any requests for support or discuss promotions on the system consoles that the catheter attaches too.  The consoles are sold by Siemens, but the catheter is sold by BWI.

7. Neither I nor Siemens Healthineers, based on contractual obligations, had oversight or responsibility for the commercialization of the 2D Catheter. Siemens is the manufacturer of this product.  Only BWI has responsibility for commercialization (sales, marketing, etc.) of the 2D Catheter. I had no visibility into sales strategy, marketing plans, or account level details of the 2D Catheter. BWI had sole rights and did not disclose this information to me or Siemens Healthineers.  General oversight over the partnership was the responsibility of the Ultrasound Division CFO (there were multiple while I was there) and Jim Gilmore, the Ultrasound Division's Head of R&D.  I was not involved in any contract negotiations involving catheter-related deals between BWI and Siemens Healthineers.  I was never invited to any meetings either in person or over the phone that directly involved Siemens Healthineers' CFO, Mr. Gilmore and BWI.  There were multiple visits by Siemens Healthineers' CFO and Mr. Gilmore to BWI that I was never invited to or included in.  While I was there, BWI also visited Korea with Jim Gilmore and others on the R&D team where the catheters are manufactured and I was never included in these meetings. The BWI catheter relationship was solely R&D, manufacturing, and financial, none of which I had responsibility for.  The only BWI

discussions and meetings I participated in were about system console sales and promotions surrounding those consoles to upgrade the console install base. This was not about catheter purchases nor tied to catheter volumes at all.

8. In February of 2020 Siemens instituted a "ship hold" on the AcuNav Volume 4D ICE Catheter which allowed those hospitals with product on the shelf to continue using the product but the company was not shipping any new product to accounts. This was the last sale date of any AcuNav Volume 4D ICE Catheters.

9. Siemens Healthineers told me on or about June 1, 2020 that my employment was going to be terminated. My last day of work at Siemens Healthineers was July 1, 2020.

10. My superior at Siemens Healthineers, Ms. Bury, informed me that I was being terminated because on or about May 22, 2020 Siemens Healthineers had recalled the AcuNav Volume 4D ICE Catheter and that the company had decided to terminate the entire commercialization team for the AcuNav Volume 4D ICE Catheter that I hired and supervised.                   See            FDA            Release (https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfres/res.cfm?id=181810)("Class   2 Recall ACUSON AcuNav Volume ICE Catheter").

11. Ms. Bury, prior to my departure, told me that Siemens Healthineers did not intend to bring back to market the AcuNav Volume 4D ICE Catheter in its existing form anytime soon. With that fact, there was nothing else for me to do in the Ultrasound Division in which I worked. Even though Plaintiff claims that I had oversight over the "2D Catheter," this is untrue. Again, Siemens Healthineers had no commercial responsibility for the 2D Catheter. Indeed, as the commercial head if I had such responsibilities I most likely

would have remained employed.

12. In June 2020, while still employed by Siemens Healthineers, I submitted an AskHR ticket 23184984: H.869444, requesting any agreements that I signed while at Siemens Healthineers. Any such agreements were not housed on my personal pages of the Siemens Healthineers HR intranet nor was there any record of them being emailed to me. Filling out a ticket on AskHR was the process I was told to follow to get them.  The reason for requesting these was I was unsure of the exact details of any agreements I had signed. I never received any response until after I was terminated almost a month after my request, in an email dated July 23, 2020, sent to my personal email address.  Subject: CAS-23184984:  H.869444.Anthony Medigo: Employment agreement.  The email stated "Hi Anthony, Our AskHR received your request for your employment agreement. I wanted to reach out to you and advise that, based on our internal policies, as a former employee, we are not permitted to release any employment records to you. Thank you.  Best regards, Lisa Henry, Global Business Services, H2R". To the best of my knowledge I did not have in my personal possession a copy of the November 13, 2018 Senior Manager Restrictive Covenants, Confidentiality and Intellectual Property Assignment Agreement that is at issue in this case and thus wasn't certain what restrictions if any I was subject to.  Copy of email attached as Exhibit 1.

13. On July 2, 2020 I signed a Separation Agreement and General Release ("Agreement") with Siemens Healthineers.  (See Maria Nuphaus Declaration, Exhibit B.)

14. On September 7, 2020, I was fortunate enough with the very limited job pool due to the pandemic to secure an offer to join NuVera Medical Inc. ("NuVera") as Chief Commercial Officer. I was introduced to NuVera via a third party who thought my

background was a good fit. There was no malice as the Plaintiff suggests. I needed a job and knew there was no competitive threat to Siemens Healthineers.  My main job responsibilities at NuVera was to begin the planning for commercialization of the NuVision 4D ICE Catheter that Nuvera had developed. Specifically, my job was to plan the sales and marketing efforts for that product. There is no commercial product available yet, but FDA approval is expected in Q1 2021 and I was preparing the company for launch. The NuVision 4D ICE Catheter is a very unique product and nothing exists like it on the market currently by any company, neither technically or functionally.  I had no oversight over the development or any other process of NuVera's 4D NuVision Ice Catheter or the company. The products design was already frozen prior to my arrival.

15. In June of 2020 after the recall of the AcuNav Volume 4D ICE Catheter was announced and the layoffs were communicated to employees, Nikki Gainey, Sr. VP of Business Development for Siemens Healthineers, was assigned responsibility over the catheters strategic direction. Ms. Gainey would have intimate knowledge of any future catheter plans.   Ms. Gainey had offered in June, after I was notified that I was being terminated by Siemens Healthineers, and again in July 2020 to introduce me to NuVera's CEO Todor Jeliaskov in order to help me become reemployed.

16. In August 2020, prior to my hiring by NuVera, Mr. Jeliaskov, spoke with Ms. Gainey, during which call she provided him with a positive reference for me to be hired, as further elaborated on in Mr. Jeliaskov's November 21, 2020 Declaration that I am submitting with my opposition papers.    I learned this fact from Mr. Jeliaskov later in September 2020 after I was hired.  This reinforces the fact that competition by NuVera was not at all a concern for Ms. Gainey, a senior executive representing Siemens

Healthineers, who is one of two witnesses presented against me in this case.  Based on the knowledge of Ms. Gainey, there must have been no commercially available product being reintroduced anytime soon nor did the Siemens Healthineers see any competitive nature of the position I was being referred for.  If I was a threat as stated in the Plaintiff's papers, surely Ms. Gainey would not have encouraged Mr. Jeliaskov to hire me.

17. On or around September 18, 2020, I spoke with Ms. Gainey by phone and told her that I was working at NuVera, at which time she congratulated me and confirmed she had heard the same.

18. Siemens Healthineers sent me a "reminder of obligations" letter on October 6, 2020 (Exhibit 2 hereto), which NuVera responded to on October 12, 2020 stating there was no breach of contract. Even though Siemens Healthineers knew I was employed by NuVera within ten (10) days of me starting there, possibly even earlier, it waited nearly two (2) months before commencing this case against me.

19. Because Siemens Healthineers was no longer actively selling or marketing the AcuNav Volume 4D ICE Catheter at the time I joined NuVera (and is still not doing so as of today confirmed by their own website), I was not competing with Siemens Healthineers while employed at NuVera in the position I held. Additionally, no position or even a similar position exists at Siemens Healthineers.   This is because it had no intention to bring the AcuNav Volume 4D ICE Catheter back to market any time soon.

20. While employed at NuVera I was never part of any business discussions with BWI.

21. On November 17, 2020, I was informed that NuVera had signed an exclusive agreement to be acquired by a third-party (confidential as of this date) and as  part of the integration

plan that entity did not need my services for commercialization of the NuVision 4D ICE Catheter and that company would be developing its own commercialization strategy and plan that did not include me or the plans I developed.  I have had no communication with this company.  I hold zero (0) equity in NuVera.

22. On November 18, 2020, I received formal notification from NuVera that my employment was being terminated and that I was being relieved of my duties immediately.  See Declaration of Todar Jeliaskov, Ex. B.  My counsel emailed the termination letter to Siemens Healthineers' counsel at 9:39am on November 18, 2020, but to my knowledge Siemens Healthineers has done nothing to advise the Court of this significant change of circumstances that undermines its application for injunctive relief.

23.   Prior to my joining Nuvera, Nuvera and specifically Mr. Jeliaskov had already engaged in discussions with partner companies, including Boston Scientific and Edwards Lifesciences. I did not bring these relationships from Siemens to NuVera.  I did not discuss with anyone at NuVera Siemens Healthineers' relationships with either of these companies, nor did I personally discuss with either company a formal partnership between them and NuVera.

24. I have no information concerning any future 4D ICE prototype catheters under development at Siemens Healthineers nor do I have any idea of the timing of any such products.  I was not in R&D at Siemens and nothing was formally presented to me prior to me departing Siemens Healthineers or its plans or timing for future products.

25. Given my 20-plus years in cardiovascular devices, I had relationships with virtually all the "key opinion leaders" (KOLs) I worked with at Siemens Healthineers prior to my

joining Siemens Healthineers in 2016. KOL's are not a "company specific" term.  They
are all publicly known because of the podium presentations that they give at industry
conferences and the publications that they write. Their opinions and use of products are
publicly known.     For example, Dr. Mani Vannan is a well-known KOL for many
companies. I had known of him well before joining Siemens Healthineers. Dr. Vannan
told me that he was in touch with NuVera and was knowledgeable about the NuVision
catheter prior to my joining NuVera, and he is well-known in the field, as a simple
Google search demonstrates.  In fact, Siemens Healthineers has disclosed its relationship
and/or connection with Dr. Vannan in a press releases issued on its own website.  (See
Exs.  3  and  4)--  https://www.siemens-healthineers.com/en-us/news/revolutionary-true-
volume-3d-tee-technology.html        &        https://www.siemens-healthineers.com/en-
us/ultrasound/ase-video (both last viewed on November 21, 2020)). Thus, the suggestion
that Dr. Vannan's name is secret and proprietary to Siemens Healthineers is patently
untrue.

26. Additionally, the use of medical devices is based on evidence and clinical effectiveness
and safety of that product not because one person can "steal" (as insinuated in the
Plaintiffs' documents) one company's KOL or physician customer base.  If a product is
deemed superior by a physician, then it is their ethical right to treat their patients with the
best available option.  The commercialization teams (like the ones I was responsible for)
that service these accounts and "sell" the products are more of clinical educators and
trainers.  The doctors will use the products based on merit and evidence and what's
clinically superior for the patient. The Plaintiff's suggestion that physicians will use
products based solely on my involvement in NuVera is contrary to the physicians' ethical

obligations.

27. At no time during my approximately two months of being employed at NuVera did I discuss with anyone at NuVera anything confidential or non-public about the AcuNav 4D Volume ICE Catheter or the 2D Catheter business.  By September 2020, the AcuNav Volume 4D ICE Catheter was no longer a competitive product to the NuVision 4D Ice Catheter, which itself as of the current is still not a commercially available product.  In fact, the only subject concerning Siemens Healthineers that I discussed with NuVera was trying to formulate a way to partner with Siemens Healthineers and make the NuVera catheter compatible with the Siemens Healthineers' system console.  This in no way involved the disclosure of any Siemens Healthineers' trade secrets or confidential information, nor did I ever disclose any such information to NuVera.

28. No Siemens Healthineers business has been impacted by anything I worked on at NuVera during my employment there nor anything in the future would be expected to be impacted since my two months of employment revolved around planning a strategy that will no longer be used by the new acquiring company.  In addition, the plans developed revolved around selling the NuVision 4D Ice Catheter into a market for which Siemens Healthineers does not have a competing product.  There has been no loss of revenue or harm done to Siemens in anyway. I have no plans whatsoever to again work for NuVera or any affiliated entity.

29.  While working at NuVera I never encouraged any third-party that had an existing or potential arrangement with Siemens Healthineers to cease doing business with Siemens Healthineers and to my knowledge no such cessation of any existing or potential

relationship has occurred on account of anything I have done.

I hereby declare under penalty of perjury that the forgoing is true and correct.

Date: November 21, 2020

Anthony Medigo

11